# United States Court of Appeals
## For the First Circuit

No. 99-1061

UNITED STATES,

Appellee,

v.

RAFAEL ARIES SANTOS BATISTA,
AKA RAFAEL MORALES, LENYN RAMOS, PAPO,

Defendant, Appellant,

No. 99-1062

UNITED STATES,

Appellee,

v.

JUAN GONZALEZ,
AKA JOSE POLANCO, JOSE RIVERA,

Defendant, Appellant,

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Selya, Boudin, and Stahl,
Circuit Judges.

_Irwin Kwiat_ for appellant Santos-Batista.

_William J. Murphy_, by appointment of the Court, for appellant Gonzalez.

Donald C. Lockhart, Assistant United States Attorney, with whom Richard W. Rose, Assistant United States Attorney, and Margaret E. Curran, United States Attorney, were on brief for appellee.

January 8, 2001

**STAHL, <u>Circuit Judge</u>**. Juan Gonzalez and Rafael Aries Santos Batista were convicted by a jury of (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and (2) possession of cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Gonzalez and Batista were sentenced to 70 months and 210 months, respectively, as Batista was linked to more transactions than was Gonzalez. Both appeal their convictions on the basis of the district court's denial of their untimely motions to suppress evidence, and Batista appeals the consideration of certain transactions in determining his sentence pursuant to the United States Sentencing Guidelines (U.S.S.G.).

## I. BACKGROUND

On January 9, 1998, Detectives David Neill and David Palmer stopped Gonzalez at a gas station for questioning, having followed him there from a multi-unit house under surveillance for suspected drug-related activity. His handling of what appeared to them to be a suspicious package had led them to follow him as he drove away from the premises. At the gas station, the officers found his demeanor suspicious. He seemed unduly anxious to return to the apartment, commenting that he was expected back there within a certain time-frame. In response to this behavior, the officers asked him to sign forms

-4-

acknowledging his Miranda rights and consenting to a search of the apartment they had been surveilling. After Gonzalez complied with this request, he also provided the officers with keys.[1]

When the officers entered the apartment, they found appellant Batista sitting on a cushion in shorts, skimming over several loose sheets of notebook paper, with pen in hand. These papers appeared to list accounts receivable for cocaine sales, as part of a larger drug ledger, and contained Batista's nickname, Papo, in several entries. With the aid of a drug-sniffing dog, the officers discovered a hidden compartment in a closet, which contained six heat-sealed bags, containing a total of 400 grams of cocaine, several of which were marked with weights that matched those written on the drug ledger pages Batista had been reviewing. The police also found, in the compartment and elsewhere in the apartment, various supplies for the processing, weighing, and packaging of cocaine, as well as a loaded handgun, $2,300 in cash, and additional drug ledgers. Because they found no food or clothing in the apartment, the officers concluded that they had found a "stash house."

---

[1] Gonzalez also signed a consent-to-search form for his own residence, and provided the officers with those keys as well. The search there yielded very little evidence, and the details are not important here.

Gonzalez and Batista were charged with conspiracy to distribute cocaine and possession of cocaine with the intent to distribute it, and their cases were combined for trial.[2] Although the defendants had several concerns regarding the validity of the search, as well as the voluntariness of their statements,[3] they did not file a motion to suppress before trial as required under FED. R. CRIM. P. 12(b)(3). From our reading of the record, this apparently was a tactical decision, and their intention was to challenge the search evidence and their implicating statements as they were presented.

The government was made aware of this intention just as the jury was about to enter for trial, and it immediately brought the issue to the district court's attention. Although the district court excused the jury so that it could hold a suppression hearing, it made it quite clear "that neither of these questions was timely raised, nor was there anything approaching a showing of good cause for being excused from the ordinary waiver requirements of Rule 12." Indeed, it appears that the only reason the judge went forward with the hearing was

---

[2] Though, to be clear, they were not facing identical factual charges. Batista was the conspiracy's ringleader, while Gonzalez was merely a courier.

[3] Because we do not address the merits of the defendants' suppression claims, see infra, we have found it unnecessary to go into any detail regarding the facts relevant to those claims.

to create a complete record in case this Court were to reverse its waiver holding. After reaching the merits, the district court denied each defendant's motion to suppress, and the trial went forward with all of the evidence less one minor redacted statement.

At the trial's conclusion, the jury convicted each defendant on both counts. Gonzalez was sentenced to 70 months imprisonment and Batista to 210 months. In calculating the proper sentencing range under the guidelines, the court included the amounts listed on the drug ledger pages[4] when imposing Batista's sentence, but did not apply these amounts to Gonzalez.

## II. ANALYSIS

We need address only two issues in these appeals: (1) whether the defendants had waived their right to file motions to suppress evidence, and (2) whether it was proper to include the drug amounts from the ledger pages when calculating Batista's sentence. Because of our holding on the first issue, see infra, it is unnecessary for us to reach the merits of the suppression motions themselves.

### A. Suppression Arguments Waived

---

[4] The judge considered only those pages that Batista actually had been perusing and marking when caught red-handed, and not the rest of the ledgers found in the apartment.

In federal criminal proceedings, motions to suppress evidence must be raised prior to trial. FED. R. CRIM. P. 12 (b)(3). "The rationale usually given for removing suppression questions from the trial itself is that 'interrupt[ing] the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention.'" United States v. Gomez, 770 F.2d 251, 253 (1st Cir. 1985) (quoting Nardone v. United States, 308 U.S. 338, 342 (1939)).

Failure to raise suppression arguments before trial "shall constitute waiver thereof." FED. R. CRIM. P. 12(f). This is mandatory language, and the rule applies broadly. See, e.g., United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998) (holding that not only is there waiver when the defendant fails altogether to file a motion to suppress before trial, but even when he has done so but did not include a particular ground and wishes to add it later), cert. denied, 526 U.S. 1057 (1999); United States v. Mendoza-Acevedo, 950 F.2d 1, 3 (1st Cir. 1991) (same).

A single narrow exception to the waiver rule provides that "the court for cause shown may grant relief from the waiver." FED. R. CRIM. P. 12(f). This relief is rarely granted, and only where there is a showing of cause and prejudice. 1

CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 193, at 339 & n.24 (3d ed. 1999). We have held in the past, and reiterate here, that a mere tactical decision to delay efforts to suppress evidence until it is adduced at trial does not come close to meeting this burden. United States v. Nunez, 19 F.3d 719, 722 (1st Cir. 1994) (distinguishing tactical decisions, or even changing one's mind later, from the paradigmatic ground for relief where the government surprises the defense with previously unknown evidence).

Moreover, because of the discretionary language in the relief clause of Rule 12(f), we review the district court's decision to deny relief only for abuse of discretion. Gomez, 770 F.2d at 253. Where a district court has elected not to grant relief from a 12(f) waiver, our analysis is not affected by its diligence--by holding a hearing on the merits--in developing the record. United States v. Bashorun, 225 F.3d 9, 14 (1st Cir. 2000) ("[W]e enforce Rule 12(f) waivers even though the district court ultimately did address the waived issue on the merits . . ."). Thus, despite the well-developed record here, because the motion to suppress was not properly raised below, with no good cause shown, we will not consider it on appeal. United States v. Marshall, 109 F.3d 94, 98-99 (1st Cir. 1997).

This Court's interpretation of the portions of Rule 12 that are relevant here has already been well established, and we need not add more. Applying our existing precedent to the adduced facts, the answer is undeniable. Neither defendant filed a motion to suppress prior to trial. They were not surprised by unexpected evidence produced by the government. Indeed, they had planned in advance to attempt to suppress the evidence as it arose during the trial. Neither defendant has provided any reason for his failure to file a timely motion other than confusion over tactical decisions. The district court found, and we agree, that there was no good cause for this failure. Because we hold that these defendants waived any suppression arguments they may have had, we do not address the merits of those claims.[5]

## B. Sentencing

Our affirmance on the first matter resolves the Gonzalez appeal, but still leaves the question of whether the district court properly followed the sentencing guidelines when determining Batista's sentence. The guideline sentencing range is determined according to a numeric figure known as the base

---

[5] Although we affirm the district court's ruling on the ground that the appellants' suppression arguments have been waived, the outcome would likely have been the same in any event. Based upon our cursory review of the appellants' suppression arguments, they appear to be without merit.

offense level. In drug-related convictions, this figure is determined in large part by quantity. Batista challenges the district court's determination of the amount attributable to him, arguing that only the quantity of drugs for which he was convicted should apply. If the district court had agreed, and only counted that quantity, then his adjusted offense level (after adding other factors not challenged here) would have been 26(II), which correlates to a sentence range of 70-87 months. However, because the district court included the amounts from the drug ledger pages Batista was reviewing when the police arrived, it determined an adjusted offense level of 34(II), which correlates to a sentence range of 168-210 months. Batista was thus sentenced to 210 months of incarceration.

In determining the base offense level, "[t]he drug quantity properly attributable to a defendant is not limited to the drugs involved in the offense of conviction." United States v. Huddleston, 194 F.3d 214, 223 (1st Cir. 1999). The Sentencing Guidelines, as applied to drug cases, require the sentencing judge to determine quantity by including all amounts "that were part of the same course of conduct or common scheme or plan as the offense of conviction," whether or not the defendant has been charged with those transactions. U.S.S.G. § 1B1.3(a)(2); see also United States v. Young, 78 F.3d 758, 763

-11-

(1st Cir. 1996); United States v. Wood, 924 F.2d 399, 403 (1st Cir. 1991); United States v. Blanco, 888 F.2d 907, 909-911 (1st Cir. 1989) (providing a thorough discussion of this requirement and why it was codified). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, cmt. n.9; see also Young, 78 F.3d at 763.

Section 1B1.3(a)(2) has its limits, however, and "[n]ot every drug transaction undertaken by every drug trafficker is necessarily linked in a meaningful sense." United States v. Sklar, 920 F.2d 107, 111 (1st Cir. 1990). It is necessary for the sentencing judge to find a sufficient link between the acts charged and those included for sentencing purposes. United States v. Duarte, 950 F.2d 1255, 1264 (7th Cir. 1991) (vacating a sentence where the judge had included prior transactions in the quantity, but had not "explicitly found that the transactions recorded in the drug notes were part of the 'same course of conduct or common scheme or plan' as the [charged] conspiracy"); Sklar, 920 F.2d at 111 ("Isolated acts cannot be conjoined and drug quantities aggregated for sentencing purposes without a rational basis."). If the judge is unable to make

this finding, "[o]ffenses of the same kind, but not encompassed in the same course of conduct or plan, are excluded."  United States v. White, 888 F.2d 490, 500 (7th Cir. 1989).

Before uncharged conduct may be used in the sentencing calculus, the burden is on the government to demonstrate a sufficient nexus between that conduct and the offense of conviction.  Young, 78 F.3d at 763; Sklar, 920 F.2d at 110. This burden, however, is met by a mere preponderance of the evidence.  Huddleston, 194 F.3d at 224; Young, 78 F.3d at 763; Sklar, 920 F.2d at 110.  Further, "[t]he rules of trial evidence do not apply; in weighing the facts the sentencing court may evaluate virtually any dependable information."  Sklar, 920 F.2d at 110 (quoting U.S.S.G. § 6A1.3 as allowing a sentencing judge to consider any information that has "sufficient indicia of reliability to support its probable accuracy").

Although we review the legal meaning and scope of the guidelines de novo, we will not upset the sentencing court's fact-based application of the guidelines unless it is clearly erroneous.  United States v. Mitchell, 85 F.3d 800, 813 (1st Cir. 1996).  In drug cases specifically, we review the sentencing court's finding that uncharged drugs were "part of the same course of conduct or common scheme or plan as the offense of conviction" only for clear error.  Young, 78 F.3d at

-13-

763; <u>Wood</u>, 924 F.2d at 403.  The same standard applies to the judge's resulting quantity determination, and "we uphold such an approximation as long as it represents a reasoned estimate of quantity."  <u>United States</u> v. <u>Webster</u>, 54 F.3d 1, 5 (1st Cir. 1995); <u>see also</u> <u>Huddleston</u>, 194 F.3d at 223-24.

Here, the district court's decision to treat the drug transactions described in the ledger pages as "a common scheme or plan" is unassailable.  When the police entered the apartment, Batista was sitting on a cushion, the four ledger pages directly in front of him, pen in hand.  Although there were other ledgers found in the apartment, the government did not attempt to include the amounts listed in them.  By means of cross-reference, it was possible to determine that the transactions on the pages in question all had occurred in the immediately preceding months prior to the arrest.  In <u>United States</u> v. <u>Tabares</u>, a strikingly similar case, we upheld a district court's decision to include amounts, listed in a spiral notebook, corresponding to sales from the preceding few months. 951 F.2d 405, 410 (1st Cir. 1991).  Indeed, we have even commented that sentencing determinations could be easier for the judges to make, if only all drug dealers would keep such complete records.  <u>Sklar</u>, 920 F.2d at 111 (granting sentencing judges significant leeway in estimating drug amounts because

-14-

"[i]t is the rare narcotics trafficker who authors a formal business plan or keeps meticulously detailed inventory records").

Our only remaining concern is _whether_ the district judge did in fact find that the transactions reflected in the ledgers "were part of the same course of conduct or common scheme or plan," as required by the guidelines.  This concern stems from the fact that the judge did not, in his finding, specifically use this language.  Indeed, the judge's finding that the ledger amounts should be included appears to focus on the issue of whether Batista was _responsible_ for the transactions they reflect.  As we have noted above, however, a defendant must not only be responsible for any uncharged acts to be considered in his sentencing, but those acts also must be linked to the offense of conviction.

Although the judge did not specifically use the guideline language, a close reading of the sentencing transcript indicates that the issue was adequately addressed, and that the district court did in fact make the necessary finding of a nexus in determining the amount relevant to the sentencing calculus. Indeed, the government focused on the "same course of conduct" requirement in its oral argument at sentencing.  However, because Batista defended himself by arguing that he was not

-15-

responsible for the ledger amounts,[6] it was this argument to which the judge responded when finding that the ledger amounts did apply in sentencing Batista.  Specifically, the district court found that the information in the ledger pages counted because the defendant was responsible for the transactions shown therein, and was "a participant in this conspiracy during the period of time reflected in the drug ledger . . . ."  The totality of the record indicates that, although the district court could have used more precise language, the ledger amounts were applied in determining Batista's sentence because the transactions described "were part of the same course of conduct or common scheme or plan as the offense of conviction."

Moreover, this conclusion is bolstered by the judge's use of the word "conspiracy" in dealing with the transactions reflected in the ledger.  We have used this term interchangeably with the phrase "common scheme or plan" in at least two sentencing cases.  See Tabares, 951 F.2d at 410 ("The legal question, then, is simply whether the court could find that the drugs referred to in the notebook were part of the scheme or

_____

[6] This is, of course, a valid focus for the defense, as the government must show both that the defendant was responsible for the amounts and that the amounts are connected to the crime of conviction.  Thus, although it would be inappropriate for the prosecution to argue the responsibility factor exclusively (which it did not do here), it was acceptable for the defense to do so.

-16-

plan or conspiracy of which the jury convicted the defendants. That is to say, was the district court's finding that these amounts were part of the conspiracy 'clearly erroneous'?"); Wood, 924 F.2d at 404 ("Sentence must be based on the [crimes] that were part of one 'common scheme or plan' (such as a single conspiracy) or a single 'course of conduct' (the unilateral equivalent to the conspiracy).") (quoting White, 888 F.2d at 500).

### III. CONCLUSION

For the foregoing reasons, we hold that (1) both defendants waived their suppression arguments by not raising them prior to trial, and (2) the district court did not err by including the amounts from the drug ledger in the calculation of Batista's sentence.

**Affirmed.**