# United States Court of Appeals
## For the First Circuit

---

No. 00-2229

UNITED STATES,

Appellee,

v.

JOHN A. SCUNGIO,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

Schwarzer,[*] Senior District Judge.

---

Francis J. DiMento with whom DiMento & Sullivan and Jason A. Kosow were on brief for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, were on brief for appellee.

---

[*]Of the Northern District of California, sitting by designation.

**CAMPBELL, <u>Senior Circuit Judge</u>.**  John Scungio was convicted on a plea of guilty to making false statements in violation of 18 U.S.C. § 1001.  He appeals from his sentence, arguing that the district court erred:  (1) by sentencing him under the Obstruction of Justice guideline instead of under the Fraud and Deceit Guideline, <u>see</u> U.S.S.G. § 2F1.1, cmt. n. 14; and (2) by applying a two-level increase in his offense level on the basis of his "special skill" of lawyering, <u>see</u> U.S.S.G. § 3B1.3.  Agreeing that the district court erred, we vacate the sentence and remand for resentencing.

At sentencing, the parties stipulated to the factual statement set forth in the presentence report (PSR).[1]  Because this appeal involves sentencing issues following a guilty plea, we take the background facts from the presentence report that followed defendant's conviction.  <u>United States</u> v. <u>Brady</u>, 168 F.3d 574, 576 (1st Cir. 1999).

---

[1] In a letter to the probation office, Scungio objected to two factual assertions in the PSR.  We have noted those objections in the factual recitation, <u>infra</u>.  The district court did not resolve the factual disputes, however, as it appears from the sentencing transcript that Scungio never reiterated his objections to the court.  Because our disposition of this case does not turn on the facts to which Scungio originally objected, we recite the entire factual description from the PSR.

During 1998, the Defendant, John A. Scungio, an attorney licensed to practice law in the State of Rhode Island and Florida, represented Gail and Paul Calenda in connection with an appeal to the Providence Board of Tax Assessment Review (BTAR). The purpose of the appeal was to lower the assessed value, and therefore the taxes, of three properties owned by the Calendas in the City of Providence.

The Chairman of the [BTAR] was Joseph A. Pannone. Pannone recommended the defendant to Gail Calenda for the purpose of facilitating her appeal. On May 18, 1998, Scungio appeared before the BTAR and made a presentation for a tax reduction on behalf of the Calendas. The [BTAR] approved a reduction from about $800,340 to $560,500. . . . The annual net tax savings was approximately $7,600 per tax year.

Prior to the May 18, 1998 hearing, Gail Calenda had met with Joseph A. Pannone and the Vice-Chairman of the BTAR, David C. Ead. The three discussed the upcoming hearing and the resulting reduction. Indeed, Ead provided the figures for Calenda to complete her appeal form and it was those figures which were submitted to the BTAR.

Between the May 18, 1998 hearing and July 24, 1998, Pannone told Scungio that Pannone, Ead, and Deputy Tax Assessor Rosemary Glancy would be splitting a $5,000 bribe from the Calendas in exchange for the reduction. On or about July 24, 1998, Gail Calenda delivered a check in the amount of $2,672.88 to John A. Scungio as a fee for services rendered. At the same time, she delivered an envelope with $5,000 in cash to the [d]efendant, John A. Scungio, for delivery to Pannone.

Scungio delivered the envelope to Pannone. Pannone told Scungio that he would

-3-

split the money with Ead and Glancy. Pannone then asked for $200 more from Scungio which would be pooled with $200 each from Ead and Pannone. The resulting $600 would be given to Rosemary Glancy. At first Scungio balked at paying the $200 but then relented and gave Pannone $200 cash for Glancy.

On May 12, 1999, Scungio was interviewed by [FBI] Agents Beverly Bartzer and William Rose . . . . In the interview[,] Scungio falsely denied that the Chairman of the [BTAR], Joseph A. Pannone, had received any money for his assistance in the reduction of the Calendas' taxes, when, in fact, John A. Scungio had delivered a sum of cash, $5,000 more or less, to Pannone from his client to be distributed among Pannone, Ead, and Glancy.

Also on May 12, 1999, Scungio denied knowing how Calenda had learned about and came to hire him when in fact, Scungio knew that Calenda had been sent to him by the then Chairman of the [BTAR].

In addition to the above offense facts, Scungio admitted paying Pannone $200 in or around 1997 for Pannone's help and referral to Scungio of the owner of East Side Copy who had a tangible tax problem with the City of Providence. Scungio represented East Side Copy in front of the BTAR and in negotiations with City Tax Assessor, Tom Rossi.[2]

---

[2] Scungio objected to this paragraph, clarifying that the case described was not pending before and was never decided by the BTAR. Scungio also clarified that, as far as he knows, Pannone never rendered any "help" to Scungio or his client before the BTAR. The $200 was intended as an expression of gratitude for the referral only.

-4-

Scungio also admitted paying Joseph Pannone around $75 for Anthony Annarino. Annarino, the then City Tax Collector, would waive interest due on overdue tax bills for a cash payment. Annarino waived interest due on property owned by Scungio.

In or about 1997, Scungio paid Pannone $100 to give to former Tax Assessor Ted Little, for Little's help obtaining an abatement on property that Scungio owned in Providence. Finally, Scungio acknowledged purchasing approximately $500 in Friends of Cianci campaign tickets from Pannone during 1997 and 1998. Scungio paid cash for the tickets.[3]

At the sentencing hearing, the district court made the two decisions favorable to the government that are the subject of this appeal. The first decision concerned the construction of application note 14 of the Fraud and Deceit guideline, U.S.S.G. § 2F1.1, the guideline that governs the sentence for the offense of making false statements, 18 U.S.C. § 1001, to which Scungio pled guilty. Note 14 concludes as follows:

Where the indictment or information setting forth the count of conviction (or a stipulation as described in § 1B1.2(a)) establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1. Otherwise, in such cases, § 2F1.1 is to be applied, but a departure from the guidelines may be considered.

---

[3] Scungio also objected to the factual assertion in this paragraph, stating that the $100 payment to Mr. Little was made in September 1994, not in 1997.

-5-

U.S.S.G. § 2F1.1, cmt. n. 14. Defendant contended that there was no other guideline that "more aptly covered" his offense of making false statements, and therefore that he should be sentenced under the Fraud and Deceit guideline. The government argued to the contrary, contending that the facts of record to which defendant had agreed, in addition to constituting the crime of making false statements, establish a violation of the "omnibus clause" of 18 U.S.C. § 1503, which prohibits, in relevant part, "corruptly . . . endeavor[ing] to influence, obstruct, or impede the due administration of justice . . . ."[4] 18 U.S.C. § 1503. As that offense is listed under the Obstruction of Justice guideline, U.S.S.G. § 2J1.2, cmt. (statutory provisions), the government argued that the Obstruction of Justice guideline "more aptly cover[s]" Scungio's offense and he should be sentenced thereunder.

The district court's second challenged decision was to apply a two-level enhancement for Scungio's alleged "special skill" of lawyering. See U.S.S.G. § 3B1.3 (directing that "if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated

---

[4] This clause is often called the "omnibus clause" of 18 U.S.C. § 1503 because it serves as a catch-all obstruction of justice provision. See United States v. Frankhauser, 80 F.3d 641, 650 (1st Cir. 1996).

the commission or concealment of the offense, increase [offense level] by two levels"). The PSR recommended that this two-level enhancement was appropriate as Scungio's special skill of lawyering exacerbated his crime.

At the conclusion of the hearing, the district court agreed with the government on both issues. It sentenced Scungio under the guideline relevant to Obstruction of Justice and it imposed the two-level enhancement, both over defendant's objections. After departing downward, the court ordered defendant to serve three years of probation, the first six months to be served in home confinement, and a $40,000 fine. In considering Scungio's appeal from both decisions, we review the district court's interpretation of the legal meaning and scope of the sentencing guidelines de novo, and the district court's factual findings for clear error. See United States v. Santos Batista, 239 F.3d 16, 21 (1st Cir. 2001). See also United States v. Henry, 136 F.3d 12, 20 (1st Cir. 1998) (reviewing de novo the district court's determination pursuant to note 14 of U.S.S.G. § 2F1.1 that the fraud and deceit guideline "more aptly covered" defendant's offenses than the guideline concerning environmental crimes).

I.      **Applying the Guideline That "more aptly cover[s]" Defendant's Offense**

As he did below, Scungio now contends that the facts to which he pled guilty and on which the district court relied at sentencing cannot, as a matter of law, establish a violation of 18 U.S.C. § 1503 or any of the other offenses to which the Obstruction of Justice guideline pertains. See U.S.S.G. § 2J1.1 (cross-referencing 18 U.S.C. §§ 1503, 1505-16, 1516). The Obstruction of Justice guideline, therefore, cannot and does not "more aptly cover[]" his offense. The district court did not disagree with Scungio's contention that the facts to which he pled guilty did not establish the offense of obstructing justice as that is defined by 18 U.S.C. § 1503. The court nonetheless determined that defendant's crime is "more aptly covered" by the Obstruction of Justice guideline because "th[e] phrase [obstruction of justice] is given a broader meaning in the guidelines than in the statutes." Defendant contends that this construction of the guideline was legal error. We agree.

The district court explained its reasoning as follows:

[I]t seems to me that under the guidelines the most appropriate guideline is the one entitled, "Obstruction of justice". Now that phrase is given a broader meaning in the guidelines than in the statutes. The obstruction of justice statutes prescribe that there shall be penalties for certain types of conduct, and some of it very serious conduct, such as intimidating witnesses and the like. But under the guidelines it has a much broader meaning. For example, it can be an obstruction of

-8-

justice under the guidelines if a defendant lies to the probation office about certain things. I add some points in those cases when that does happen, or lies to the Court. So that it's sort of a generic obstruction of justice guideline here that applies when the other guideline, fraud and deceit, is not the most applicable. It seems to me, considering the underlying offense, and the conduct of the defendant toward the FBI, that this was an obstruction of justice in the very broad sense.

Although we understand the court's point of view,[5] we can find no support for applying note 14 of U.S.S.G. § 2F1.1, which is the section of the guideline that authorizes looking beyond § 2F1.1 in certain circumstances, in the manner done by

---

[5] We recognize there are circumstances under which a district court, when sentencing a defendant for an offense other than obstruction of justice, may nevertheless enhance that sentence for behavior deemed to have obstructed justice even when the defendant has not been charged with the offense of obstruction of justice as defined by 18 U.S.C. § 1503. It is possible that this is the kind of situation the district court had in mind. The guidelines provide for such an enhancement

[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense....

U.S.S.G. § 3C1.1. However, enhancing the sentence for another crime pursuant to this provision of the guidelines in Chapter Three ("Adjustments") is not the same as sentencing a defendant for offense conduct described in Chapter Two ("Offense Conduct") and referenced under the Obstruction of Justice guideline, § 2J1.1, contained therein.

-9-

the district court.  The language of application note 14 of U.S.S.G. § 2F1.1 directing use of another sentencing guideline where the indictment establishes an offense "more aptly covered" by that guideline must be construed in context of the entire application note, which reads as follows:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense <u>is also covered by a more specific statute</u>.  Examples include false entries regarding currency transactions, for which § 2S1.3 ["Structuring Transactions to Evade Reporting Requirements . . . Knowingly Filing False Reports"] would be more apt, and false statements to a customs officer, for which § 2T3.1 ["Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property"] likely would be more apt. Where the indictment or information setting forth the count of conviction (or a stipulation as described in § 1B1.2(a)) establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1. Otherwise, in such cases, § 2F1.1 is to be applied, but a departure from the guidelines may be considered.

U.S.S.G. § 2F1.1, cmt. n. 14.  (emphasis supplied).  The first sentence of application note 14 indicates that recourse to another guideline under that note was designed for situations where fraudulent statements are prosecuted under 18 U.S.C. § 1001 (as here), or under another general statute, but where the offense is "<u>also covered by a more specific statute</u>."  U.S.S.G.

-10-

§ 2F1.1, cmt. n. 14 (emphasis supplied). In such cases, the sentencing guideline applicable to the more specific statute may be used. The examples given in note 14 are of this type. Not only does the application note not appear to encompass movement from a guideline covering a general offense, such as making false statements, 18 U.S.C. § 1001, to another guideline covering an equally or more general offense, such as obstruction of justice, 18 U.S.C. § 1503 (as invoked here), but it also makes no provision for use of another sentencing guideline unless defendant's stipulated offense conduct is "also covered" by the requirements of an offense referenced under the alternative guideline, here U.S.S.G. § 2J1.2 ("Obstruction of Justice"). U.S.S.G. § 2F1.1, cmt. n. 14 (emphasis supplied). See also id. ("Where the indictment . . . setting forth the account of conviction (or . . . stipulation . . .) establishes an offense more aptly covered by another guideline . . . .") (emphasis supplied). Even assuming, therefore, that 18 U.S.C. § 1503 were a more specific statute within the meaning of application note 14, that note's express language makes clear that unless defendant's stipulated offense conduct established a violation of 18 U.S.C. § 1503 as well as of 18 U.S.C. § 1001, it could not be "more aptly covered" by the former's guideline.

This last point merits further discussion. When the district court jumped from the Fraud and Deceit guideline to the Obstruction of Justice guideline pursuant to application note 14 to U.S.S.G. § 2F1.1, it opined that the "phrase ['obstruction of justice'] . . . is given a broader meaning in the guidelines than in the statutes." While there may be some truth to this statement as regards the making of adjustments under Chapter Three, see supra note 5, it has no relevance to application note 14. Indeed, the court's interpretation runs counter to this circuit's precedent in United States v. Brady, 168 F.3d 574 (1st Cir. 1999), a case that neither party brought to the district court's attention.

In Brady, in the context of reviewing a district court's conclusion that the crime of criminal contempt to which the defendant had pled guilty was most "analogous" for sentencing purposes to those category of crimes listed under the obstruction of justice guideline,[6] this court determined that

---

[6]   The term "analogous" comes from a provision of the sentencing guidelines other than that at issue here, which provides that "[f]or statutory provisions not listed in the Statutory Index [such as criminal contempt, the offense at issue in Brady], use the most analogous guideline. See § 2X5.1 (Other Offenses)." U.S.S.G. § 1B1.2(a). This directive does not come into play in our case because the offense of making false statements is listed in the Sentencing Guidelines' Statutory Index. Brady remains instructive, however, as it interpreted the scope of the same Obstruction of Justice guideline as much narrower than did the district court.

"the [Sentencing] Commission intended the . . . phrase ['obstruction of justice', in the title of U.S.S.G. § 2J1.2] to have the same meaning as the crime defined in 18 U.S.C. § 1503, which is cross-referenced by the [Obstruction of Justice] guideline U.S.S.C. § 2J1.2, comment. (statutory provisions) . . . ." Id. at 577. Brady went on to conclude that despite defendant's plea to criminal contempt, the facts of record established by a preponderance of the evidence the offense of obstructing justice as defined by 18 U.S.C. § 1503, permitting the district court to have sentenced him, by analogy, under the Obstruction of Justice guideline. Id. at 577-580. "The elements of the obstruction offense -- purely an issue of law -- are defined by the statute and interpretive case law." Id. at 577.

Under Brady's reasoning as well as the language of application note 14 to U.S.S.G. § 2F1.1, when the district court sentenced the defendant under the Obstruction of Justice guideline as the guideline that "more aptly cover[s]" the offense of conviction, it was required to have done so (1) with reference to a statute listed thereunder that more specifically describes the defendant's offense conduct than does the offense of making false statements and (2) by finding by a preponderance

-13-

of the evidence that the elements of that "more specific statute" were met. U.S.S.G. § 2F1.2, cmt. n. 14. The district court did not follow this approach. Instead, it adopted the mistaken premise that the Obstruction of Justice guideline, the one that ostensibly "more aptly covered" the offense of conviction, "is given a broader meaning in the guidelines than in the statute," and held that, despite the lack of factual support for a finding of a violation of 18 U.S.C. § 1503 to which the government referred in order to invoke the Obstruction of Justice guideline, Scungio's crime of lying to the FBI was "obstruction of justice in the very broad sense." This approach went beyond anything authorized in the guidelines.

Had the district court applied the factual allegations in the indictment charging Scungio with making false statements, or the stipulated facts in the PSR describing the offense conduct, to the elements of 18 U.S.C. § 1503, it would not have been able to conclude that the Obstruction of Justice guideline or the offense of obstructing justice as defined by 18 U.S.C. § 1503 covers -- let alone "more aptly cover[s]" -- Scungio's offense. Neither the indictment charging Scungio with making false statements nor the stipulated facts contained in the PSR establish what the Supreme Court has ruled is an essential element of 18 U.S.C. § 1503: that defendant knew or had notice

-14-

of a pending proceeding that his false statements would obstruct. See Pettibone v. United States, 148 U.S. 197, 207 (1893) (holding that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court"). See also United States v. Aguilar, 515 U.S. 593, 601 (1995) (extending Pettibone, holding that defendant's false statements to the FBI did not violate 18 U.S.C. § 1503's prohibition of endeavoring to obstruct the due administration of justice absent evidence that defendant knew that his false statements would be provided to the grand jury); Frankhauser, 80 F.3d at 650-51 (in a prosecution under 18 U.S.C. § 1503, in the absence of some evidence that defendant knew or had notice of a pending grand jury proceeding concerning the individual about whom he lied to the FBI, motion of acquittal should have been granted). In other words, without facts to support by a preponderance of the evidence an essential element of the relevant obstruction of justice offense, Scungio's offense was not "more aptly covered" by the Obstruction of Justice guideline and sentencing could not proceed thereunder. See, e.g., United States v. Duranseau, 19 F.3d 1117, 1123 (2d Cir. 1994) (interpreting the same "more aptly covered" language that annotates the Fraud and Deceit

-15-

guideline, § 2F1.1, and holding that it was reversible error to sentence under the Obstruction of Justice guideline because the referenced perjury offense did not "more aptly cover[]" the defendant's offense as the defendant never submitted a statement under oath or the penalty of perjury, an essential element of perjury).

The only factual finding the district court made with regard to the requirement that the defendant knew of the pending proceeding he is alleged to have obstructed is that some such related proceeding was actually pending before a grand jury. The district court found that "when [Scungio] lied to the FBI about [Pannone accepting the Calendas' bribe money and Pannone referring Scungio to the Calendas for representation], the FBI was in the middle of a very serious investigation and a grand jury had been already impaneled." Notably, the district court did not find that the defendant knew of the grand jury proceeding, see Frankhauser, 80 F.3d at 650-51, or, more importantly, that the false statements he provided to the FBI in connection with that proceeding would be provided to the grand jury, see Aguilar, 515 U.S. at 601. Moreover, there are no facts in the indictment or in the PSR from which the district court could have found such specific knowledge on Scungio's part. At most, the facts establish that Scungio knew that the

-16-

FBI was investigating Pannone about his role in public corruption in Providence. These facts do not establish by a preponderance of the evidence that Scungio knew of the grand jury proceeding that was investigating Pannone's past acts of extortion and mail fraud, past acts that were unrelated to those in the present case involving Scungio. See id. (stating that the mere fact that defendant knows of a grand jury proceeding when he makes false statements to an FBI agent "would not enable a rational trier of fact to conclude that [defendant] knew that his false statement would be provided to the grand jury, and that the evidence goes no further than showing that the [defendant] testified falsely to an investigating agent"). Nor do they establish that Scungio knew that the statements he was making to the FBI, fairly construed as exculpatory denials, would reach the grand jury.

As neither the indictment nor the PSR establish a violation of 18 U.S.C. § 1503, Scungio's offense is not "more aptly covered" by the Obstruction of Justice guideline. Sentencing Scungio thereunder was therefore error.

## II.       Applying the "Special Skill" Enhancement

In response to Scungio's second issue on appeal, the government now concedes that the district court erred in

applying a two-level increase in defendant's offense level on the basis of his "special skill" of lawyering, see U.S.S.G. § 3B1.3, as there was insufficient evidence in the record to support such an enhancement. See id. (for the special skill enhancement to apply, the government must show both that the defendant possessed a special skill and that he used that special skill "in a manner that significantly facilitated the commission or concealment of the offense"); United States v. Reccko, 151 F.3d 29, 31 (1st Cir. 1998) (defining this enhancement process as a two-step inquiry:  (1) determining whether the defendant possesses a special skill and (2) how, if at all, the defendant used that skill to facilitate or conceal the offense).  We agree.  Not only was there insufficient evidence to conclude that Scungio's skill as a tax lawyer significantly facilitated his deceitful responses to the FBI in these circumstances,[7] but the district court also did not make findings to that effect.  See Reccko, 151 F.3d at 31 (defining

---

[7] The sentencing guidelines define attorneys as possessing a special skill. See U.S.S.G. § 3B1.3, cmt. n. 3. The question before the district court, then, was whether the government proffered evidence sufficient to support a finding by a preponderance of the evidence that Scungio's skill as an attorney "significantly facilitated" the commission of his offense. See United States v. Connell, 960 F.2d 191, 197 (1st Cir. 1992) ("The prosecution has the burden of proving, by a fair preponderance of the evidence, that section 3B1.3 applies in a given situation.").

the second prong as requiring a finding that the defendant used that skill to facilitate or conceal the offense in a significant way). At most, it might be surmised that Scungio's lawyering skills could be put to such a use in other hypothetical circumstances. This is not enough to support the enhancement.

We therefore **<u>vacate</u>** the sentence as imposed by the district court under U.S.S.G. § 2J1.1, the Obstruction of Justice guideline, and under U.S.S.G. § 3B1.3, and remand to the district court for resentencing not inconsistent with this opinion.