**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 00-2267
No. 01-1974

UNITED STATES OF AMERICA,
Appellee,

v.

OTONIEL MEDINA,
JOSÉ MEDINA,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Baldock,* Senior Circuit Judge.

Charles W. Groce, III, by appointment of the court, for appellant Otoniel Medina.
Ralph J. Perrotta, by appointment of the court, for appellant José Medina.
Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

August 27, 2003

*Of the Tenth Circuit, sitting by designation.

**BALDOCK, <u>Senior Circuit Judge</u>**.  Defendant Otoniel Medina and Defendant José Medina each appeal their convictions, following a joint jury trial, on conspiracy and drug charges.[1]  José Medina also appeals his sentence.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm.

## I.

Defendants José and Otoniel Medina are brothers.  Evidence at trial indicated José was the leader of a cocaine distribution conspiracy.  Otoniel lived with his brother and assisted in the sale of cocaine; making deliveries, accepting payments, and taking orders when José was not available.

In December 1999, Edward Giargiari arranged to purchase one half kilogram of cocaine from José.  On December 9, José delivered a quarter kilogram and arranged to deliver the remaining amount the following evening.  Following the initial sale, Giargiari was arrested by members of the local police.  The police searched his hotel room and discovered the cocaine and $8,000 in

---

[1]The jury convicted Defendant Otoniel Medina on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and one count of possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  The district court sentenced Otoniel to 63 months imprisonment.  The jury convicted Defendant José Medina on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, two counts of possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and two counts of unlawful use of a communication facility in violation of 21 U.S.C. § 843(b).  The district court sentenced José to 121 months imprisonment.

cash.  Following his arrest, Giargiari agreed to work with the Drug Enforcement Administration as a cooperating witness.  Giargiari named José as his supplier and confessed to the planned purchase of additional cocaine.

Over the next three months, Giargiari, at the direction of DEA agents, contacted José and arranged to purchase additional quantities of cocaine.  On December 23, 1998, Giargiari arranged to purchase a quarter kilogram of cocaine.  José sent an intermediary, co-defendant Josué Vázquez, to deliver the cocaine and accept payment.  In March 1999, Giargiari arranged to purchase one kilogram of cocaine.  José conducted the sale.  Otoniel and Vázquez each were present and assisted with the transaction.  After Giargiari confirmed the presence of one kilogram of cocaine, law enforcement agents interrupted the sale and arrested José, Otoniel, and Vázquez.  The agents recovered a paper bag containing 1.2 kilograms of cocaine.

Following his arrest, José consented to a search of the residence he shared with Otoniel.  During the search, officers recovered a scale, cash, cocaine, and other evidence of narcotics possession and distribution.

At trial, Giargiari and several other Government witnesses testified that they had purchased significant amounts of cocaine from José on a regular basis.  Vázquez and José's cousin, José Ortiz, both testified that they had sold or delivered cocaine

on José's behalf. Most witnesses also testified that Otoniel assisted his brother in selling cocaine.

A key component of Defendants' trial strategy was to discredit the Government's witnesses, most of whom were admitted drug dealers that had received immunity or a reduced sentence in exchange for their testimony. During trial, cross-examination of a key Government witness revealed impeachment evidence the Government had not previously disclosed to Otoniel. Cross-examination of a later Government witness revealed impeachment evidence the Government did not disclose to either Defendant. Otoniel twice moved for a mistrial based on the Government's failure to disclose evidence. The district court denied both motions. Neither Defendant sought a continuance.

José also attempted to argue that the DEA's use of Giargiari to arrange controlled buys was a form of entrapment, but the district court refused José's requests to instruct the jury on entrapment. During deliberations, the jury sent a note to the court asking whether it should consider José's entrapment defense. The district court responded that the issue of entrapment was not before the jury and instructed the jurors to continue deliberations based on the instructions given. The jury subsequently returned a guilty verdict on each charged count.

On appeal, Otoniel asserts 1) the district court abused its discretion in failing to grant a continuance following the

Government's delayed disclosure of impeachment evidence; and 2) the court reporter's delay in providing a complete transcript delayed his appeal and thereby deprived him of his due process rights.[2] José asserts 1) the district court erred in refusing to instruct the jury on entrapment; and 2) the district court committed clear error in calculating the quantity of drugs attributable to him for sentencing.

## II.

Otoniel first asserts the district court erred in failing to, sua sponte, grant a continuance after the Government failed to disclose impeachment evidence. Assuming Otoniel properly preserved this claim, this Court reviews for an abuse of discretion the district court's decision on how to handle a delayed disclosure of Brady or Giglio material.[3]  United States v. Villarman-Oviedo, 325

---

[2]In a pro se supplemental brief, Otoniel also raises a number of additional claims that counsel declined to raise on his behalf. This Court did not enter an order requiring the Government to respond and the Government did not respond. Otoniel's pro se claims are without merit.

[3]Otoniel arguably did not properly preserve the claim. "As a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he has suffered prejudice as a result of late-arriving discovery." United States v. Sepúlveda, 15 F.3d 1161, 1178 (1st Cir. 1993); see also United States v. Smith, 292 F.3d 90, 102 (1st Cir. 2002). Otoniel asserts he preserved his claim by requesting a mistrial. Otoniel's motion for a mistrial was predicated on what he perceived as the Government's bad faith in delaying disclosure, not the need for additional time to incorporate the newly disclosed evidence. The district court found no impropriety on the part of the Government. Because Otoniel never asserted the need for time to incorporate the evidence, it is very doubtful that he properly preserved the

F.3d 1, 13 (1st Cir. 2003) (citing United States v. Catano, 65 F.3d 219, 227 (1st Cir. 1995)).  To establish an abuse of discretion, a defendant must establish both that the information was material and that the "defendant was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case."  Id.  The primary inquiry is whether the Government's failure to provide the information in a timely manner "caused the defense to change its trial strategy."  United States v. Joslyn, 99 F.3d 1182, 1196 (1st Cir. 1996).  Defendant must make some showing of prejudice beyond mere assertions that he would have conducted cross-examination differently.  Villarman-Oviedo, 325 F.3d at 14 (citing United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990)).

### A.

During cross examination by José's counsel, Giargiari revealed that he had asked his father to participate in a bankruptcy fraud scheme by hiding funds Giargiari received while in prison.  Giargiari also stated that he had discussed the scheme with a DEA agent three days before trial.  José and Otoniel both objected, arguing the Government should have disclosed that Giargiari had talked with the Government about the fraud scheme.  Otoniel also objected that he knew nothing about the fraud scheme.

The Government responded that it had learned of the

current claim.

scheme three days earlier when it received copies of tapes subpoenaed by José. José subpoenaed the tapes as part of discovery, received the tapes on the same date the Government received them, and was aware of the fraud scheme. The Government acknowledged that it had not provided copies of the tapes to Otoniel, stating it had assumed José would share the information with Otoniel as part of their joint defense. The Government also stated that Giargiari's conversations with a DEA agent did not reveal any additional impeachment material. Otoniel requested a mistrial based on the Government's failure to produce the tapes, arguing that he had not heard the tapes and would not be able to use the tapes on cross-examination. He did not request a continuance. The court denied the mistrial motion finding no impropriety on the part of the Government and stating that, in its view, Otoniel had not been prejudiced by the Government's action. The court did order the Government to produce the tapes to Otoniel. Otoniel was able to review the tapes overnight prior to conducting his cross-examination.

On appeal, Otoniel provides no evidence of prejudice resulting from the Government's delayed disclosure of the tapes. José was aware of Giargiari's fraud scheme prior to trial and fully incorporated the information into his cross-examination, questioning Giargiari at length on the scheme and the substance of his conversations with his father. Otoniel not only benefitted

from this cross-examination, which put the impeachment evidence before the jury, but also was able to incorporate the information into his own cross-examination. Defendants also impeached Giargiari with numerous other examples of Giargiari's willingness to break the law. In response to cross-examination, Giargiari admitted he had an extensive criminal history and that he had violated the provisions of his cooperation agreement with the Government by continuing to buy, sell and use narcotics. Defendants also questioned Giargiari extensively on the benefits he hoped to receive in exchange for his testimony. Given the extensive impeachment material available on this witness, it is not clear the Government's failure to disclose the tapes to Otoniel was material. Even if material, Otoniel has not offered any evidence of prejudice.

**B.**

On the fifth day of trial, the Government called José Ortiz who testified that he had delivered cocaine for both José and Otoniel. On cross-examination, he stated he was testifying in exchange for immunity from prosecution. Otoniel objected that he had not expected Ortiz to testify because Ortiz had asserted his Fifth Amendment rights before the grand jury. Both José and Otoniel asserted they had not received a copy of the Government's proffer letter to Ortiz. The Government stated it had provided a copy of the proffer letter to both Defendants and further noted

that it had included Ortiz on its witness list, thereby giving notice that Ortiz would testify. Otoniel moved for a mistrial based on the Government's "continuing" failure to provide impeachment evidence. The court denied the motion, noting that there was no prejudice from the delayed disclosure.

Ortiz' testimony on direct examination was limited and served largely to corroborate other witnesses' testimony. On cross-examination, Defendants elicited the full details of Ortiz' cooperation with the Government including the fact that he was not to be prosecuted for his cocaine distribution or for his continuing use of marijuana. Otoniel does not offer a single concrete example of how his defense strategy would have changed given more timely disclosure of the proffer letter and has not established that he was prejudiced by the delayed disclosure of the evidence.[4]

**III.**

Otoniel also asserts he was denied his due process right to a timely appeal because of the court reporter's delay in producing the final portion of the trial transcript. Otoniel

---

[4]Otoniel also asserts that the Court should use its "supervisory power" to reverse his conviction based on the Government's delayed disclosure of impeachment evidence. There is no basis for this Court's use of its supervisory power. The district court found no evidence the Government acted in bad faith and Otoniel has not provided any evidence he suffered prejudice as a result of the Government's act. See United States v. Houlihan, 92 F.3d 1271, 1291 (1st Cir. 1996) (use of supervisory power appropriate only if "plain prosecutorial misconduct is coupled with cognizable prejudice to a particular defendant.").

-9-

claims he suffered prejudice from the delay because he was in prison pending his appeal.

This claim has no merit. "Although extreme delay in the processing of an appeal may amount to a due process violation, and delays caused by court reporters are attributable to the government for purposes of determining whether a defendant has been deprived of due process, mere delay, in and of itself will not give rise to a due process infraction." United States v. Luciano-Mosquera, 63 F.3d 1142, 1158 (1st Cir. 1995) (internal citations omitted). The defendant must show prejudice. Id. "Whether an appellate delay results in prejudice sufficient to warrant reversing a conviction rests, most importantly, on a showing that it has impaired the appeal or the defense in the event of retrial." Id.

In this case, Otoniel has failed to show prejudice. Although there was a significant delay in preparing the transcripts, Otoniel does not claim that the transcripts are incomplete or unreliable. This is not a situation in which the court reporter has prepared an unusable transcript. Cf. United States v. Wilson, 16 F.3d 1027, 1031 (9th Cir. 1994) (record had portion missing or was unintelligible so that record was totally unreliable). The only prejudice Otoniel asserts is "oppressive incarceration pending appeal." The fact that Otoniel was incarcerated during the delay is not a legally cognizable form of prejudice.

**IV.**

Both Defendants claim the district court erred in refusing to instruct the jury on entrapment. José filed proposed jury instructions that included a request for an entrapment instruction. The district court rejected the instruction after concluding there was no evidence of entrapment. Despite the court's ruling, José argued entrapment in his closing statement to the jury. Upon retiring for deliberations, the jury sent a note to the court asking whether it should consider José's entrapment argument. Overruling Defendants' objection, the district court responded that the issue of entrapment was not before the jury and instructed the jurors to continue deliberations based on the instructions given.

We review de novo the district court's decision not to instruct the jury on entrapment.[5] United States v. Joost, 92 F.3d 7, 12 (1st Cir. 1996). A defendant is not entitled to an entrapment instruction unless the record, when viewed in the light most favorable to the defendant, furnishes a reasonable basis for

---

[5]Otoniel failed to properly preserve this claim by failing to request an instruction on entrapment, failing to adopt José's request, and failing to object to the district court's refusal to give the instruction. Although Otoniel did object when the district court refused to give the instruction following the jury's request, this is insufficient to preserve the issue for appeal. Entrapment is an affirmative defense, and the burden is on the defendant to raise and support the defense during trial. See United States v. Gifford, 17 F.3d 462, 467 (1st Cir. 1994). Accordingly, the court reviews Otoniel's claim for plain error.

-11-

the defense.  United States v. Rodríguez, 858 F.2d 809, 813 (1st Cir. 1988).  To warrant an entrapment instruction, a defendant must present some evidence from which a reasonable jury could find: (1) improper government inducement to commit the offense and (2) a lack of predisposition on the part of defendant to commit such an offense.  United States v. Gendron, 18 F.3d 955, 960 (1st Cir. 1994).  The district court concluded Defendants had not provided evidence of either an improper inducement or a lack of predisposition.

Improper inducement consists of providing an opportunity to commit a crime "plus something else," generally excessive pressure by the Government upon the defendant or taking advantage of a non-criminal motive.  Id. at 961.  In determining "predisposition," the court asks "how the defendant likely would have reacted to an ordinary opportunity to commit the crime."  Id. at 962.  Conclusory, self-serving statements by Defendant that he would not have committed the crime are not sufficient.

The district court did not err in refusing to instruct the jury on entrapment.  Giargiari and several other witnesses testified that both Defendants were actively engaged in the sale of cocaine for several years prior to their arrest.  Although José asserts he was trying to get involved in legal enterprises, the evidence of narcotics distribution found in his home, as well as the testimony of his years of dealing narcotics indicates he was

predisposed to commit the crime. In addition, neither Defendant provided any evidence of excessive pressure by the Government.

**V.**

Finally, José asserts the sentencing court committed clear error in calculating the drug quantity attributable to him. The Sentencing Guidelines provide: "[W]here there is no drug seizure amount or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of controlled substance." U.S.S.G. § 2D.1.1, cmmt n.1. The PSR concluded José was responsible for 1,252 grams of cocaine, representing the quarter kilogram Giargiari purchased from José on December 23, 1998, and the one kilogram Giargiari purchased from Otoniel and José on March 30, 1999. The PSR thus assigned a base offense level of 26 (the offense level representing 500 grams to 2 kilograms of cocaine). The Government objected to probation's calculation, arguing that a preponderance of the trial evidence, as well as Giargiari's debriefing report, indicated that José "reasonably foresaw" the distribution of at least 4 kilograms of cocaine during the course of the conspiracy. The Government's calculation resulted in a base offense level of 30 (the offense level representing 3.5 to 4.0 kilograms of cocaine).

At the sentencing hearing, the Government offered to call Giargiari and Vázquez to testify about the quantity of drugs sold during the conspiracy, and entered the debriefing report into

evidence.  According to the debriefing report, Giargiari stated that he began buying cocaine from José in 1996 in gram and 2 gram quantities.  By September 1998, he began buying larger amounts, buying quarter and half kilogram quantities on seven to nine occasions.  The Government noted that Giargiari had not testified about his prior purchases of cocaine during trial because the Government's focus had been on the two controlled buys.  José stated that he did not doubt the Government's proffer of proof, i.e. that Giargiari would testify consistently with the statements in the report,[6] but objected that he had been in Florida for some of the relevant period and that Giargiari's statements in the debriefing report were inconsistent with his trial testimony.

The district court sustained the Government's objection,

---

[6]José also asserts counsel at sentencing provided ineffective assistance by failing to object to the Government's proffer, thus giving counsel the opportunity to cross-examine Giargiari and Vázquez.  This claim is not properly before us.  This Court has repeatedly emphasized that fact-specific ineffective assistance claims cannot be raised on direct review of a criminal conviction, but must first be presented, and ruled upon, by the district court. United States v. Campbell, 268 F.3d 1, 7 (1st Cir. 2001); see also Massaro v. United States, 123 S.Ct. 1690, 1694 (2003)(noting that a motion brought under § 2255 is preferable to direct appeal for deciding ineffective assistance claims because the record on direct appeal often will be incomplete or inadequate).

José also asserts the district court's sentence violated Apprendi.  Other than the citation to Apprendi, José does not expand on this argument.  Accordingly, José waived the claim. United States v. Berrio-Callejas, 219 F.3d 1, 3 (1st Cir. 2000) (claim presented without argument or case citations deemed waived on appeal). Regardless, José's sentence was well within the statutory maximum of twenty years imprisonment. Thus, the district court's calculation of drug quantity did not violate Apprendi.

concluding that the Government had proposed an accurate and conservative calculation of drug quantity and finding ample evidence in the record to support the amount based on Giargiari's testimony of the significant increase in the quantities he purchased from José over the course of their dealings. José asserts the district court erred in relying partially on Giargiari's debriefing report in determining the quantity of cocaine.

We review the district court's factual findings for clear error. United States v. Caba, 241 F.3d 98, 102 (1st Cir. 2001). The district court's approximation of drug quantity should be upheld "as long as it represents a reasoned estimate of quantity." United States v. Santas Batista, 229 F.3d 16, 21 (1st Cir. 2001). A reasoned estimate must be based on an adequate indicia of reliability and support in the record. "Where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." Id.

The district court based its determination of drug quantity on the trial testimony describing José's extensive involvement in the narcotics trade as well as on the Government's proffer at sentencing. In light of the evidence before it, the district court did not commit clear error in calculating drug quantity.

## VI.

For the reasons stated above, we AFFIRM Defendants' convictions.  We also AFFIRM the sentence imposed on Defendant José Medina.