# United States Court of Appeals
## For the First Circuit

No. 00-1945

UNITED STATES OF AMERICA,

Appellee,

v.

KENNETH J. EIRBY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Edward S. MacColl and Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., on brief for appellant.
Jay P. McCloskey, United States Attorney, and F. Mark Terison, Senior Litigation Counsel, on brief for appellee.

August 29, 2001

**SELYA, Circuit Judge.** Defendant-appellant Kenneth J. Eirby complains that the district court impermissibly attributed to him, for sentencing purposes, a quantity of crack cocaine (cocaine base) greater than that described in the indictment and plea agreement. In his view, the resultant sentence and the methodology used to arrive at it intrude upon the prerogative of the grand jury and, in the bargain, offend the principles enunciated in Apprendi v. New Jersey, 530 U.S. 466 (2000). In a more global attack on his sentence, he also asseverates that the federal criminal statutes and sentencing guidelines are unconstitutional to the extent that they afford widely disparate treatment to cocaine in its base and powder forms. Discerning no reversible error, we affirm.

## I.

## Background

The facts are virtually undisputed. In late 1999, law enforcement officers caught the appellant red-handed as he endeavored to peddle cocaine base. A federal grand jury sitting in the District of Maine thereafter returned a two-count indictment against him. The appellant eventually agreed to plead guilty to the first count of the indictment (which charged him with conspiracy to distribute cocaine base) and the government agreed to dismiss the second count (which charged a

-3-

specific distribution offense).  Like the indictment itself, a non-binding plea agreement (the Agreement), entered into between the appellant and the government under the aegis of Fed. R. Crim. P. 11(e)(1)(B), mentioned 21 U.S.C. § 841(b)(1)(B) and described the "penalty which may be imposed upon conviction" as "a term of imprisonment of not less than five years or more than forty years" (the precise parameters limned in section 841(b)(1)(B)).

Based on the presentence investigation report, the district court, over objection, found the appellant responsible for 147 grams of crack cocaine (enough to subject him to a different penalty provision — that contained in 21 U.S.C. § 841(b)(1)(A)).[1]  Because the indictment and the Agreement each referenced section 841(b)(1)(B) rather than section 841(b)(1)(A), the district court recessed the disposition

---

[1]In general, 21 U.S.C. § 841(b)(1) sets out a type-and-quantity-driven sentencing regime for violations of 21 U.S.C. § 841(a).  While section 841(b)(1)(C) prescribes penalties for violations of section 841(a) when no drug quantities are specified, sections 841(b)(1)(A) and 841(b)(1)(B) prescribe differing penalties for violations of section 841(a) depending upon, inter alia, drug type and drug quantity.  Pertinently, section 841(b)(1)(A) prescribes a minimum sentence of 10 years and a maximum sentence of life imprisonment for offenses involving 50 grams or more (but less than 150 grams) of cocaine base.  Section 841(b)(1)(B) prescribes a minimum sentence of 5 and a maximum sentence of 40 years for offenses involving five grams or more (but less than 50 grams) of cocaine base.

-4-

hearing and offered the appellant an opportunity to withdraw his plea.

After considering the court's offer for approximately five weeks, the appellant decided to proceed, but reserved the right to appeal the determination that section 841(b)(1)(A) applied. The parties subsequently stipulated, for sentencing purposes, that the appellant "[was] responsible for at least 50 grams, but less than 150 grams, of cocaine base," and that his base offense level was 32.

When the district court reconvened the disposition hearing, it rejected the appellant's constitutional challenge to the disparity between cocaine base and cocaine powder. Moving from the general to the specific, the court found that the appellant's relevant criminal conduct consisted of distributing 147 grams of crack cocaine (cocaine base). After applying an appropriate three-level reduction for acceptance of responsibility, see USSG §3E1.1, the court arrived at an adjusted offense level of 29. In conjunction with the appellant's criminal history category (II), the adjusted offense level yielded a guideline sentencing range (GSR) of 97-121 months. The court's drug-quantity determination and its invocation of section 841(b)(1)(A) brought into play a mandatory minimum sentence of 120 months (which, coincidentally, was

within the GSR).  Starting from that baseline, the court departed downward for substantial assistance, USSG §5K1.1, and sentenced the appellant to serve a 66-month incarcerative term. This appeal followed.[2]

## II.

## Discussion

The appellant's best argument is that the district court usurped the grand jury's province by impermissibly substituting 21 U.S.C. § 841(b)(1)(A) for 21 U.S.C. § 841(b)(1)(B). While this argument obliquely involves Apprendi, he places his next three arguments squarely under the Apprendi umbrella.  He asserts that, post-Apprendi, drug quantity no longer can be treated as a sentencing factor, but, rather, must be treated as an element of the offense — and therefore must be charged in the indictment and proven beyond a reasonable doubt; that the lower court's drug-quantity determination, made pursuant to a preponderance-of-the-evidence standard, exposed him to a higher mandatory minimum sentence (and, thus, offended

---

[2]The government attempts to stall this appeal at the starting gate on the basis that the appellant's guilty plea, coupled with his decision not to withdraw that plea after the district court announced its intention to sentence him under 21 U.S.C. § 841(b)(1)(A), constituted a waiver of any rights arising out of the grand jury's failure to specify the appropriate drug weight in the indictment.  Given our disposition of the appellant's asseverational array, see text infra, we need not delve into the question of waiver.

Apprendi); and that Apprendi requires a distinction, not drawn by the court below, between the quantity of drugs "involved" in an offense (for the purpose of ascertaining the applicable statutory mandatory minimum sentence) and the quantity of drugs for which a defendant is "responsible" (for the purpose of determining the applicable GSR). The appellant's last argument assails, on constitutional grounds, what he deems the draconian nature of the criminal penalties that Congress has attached to crack cocaine.

## A.

### Standards of Review

We pause at the onset to delineate the standard of review. The appellant squarely challenged the district court's invocation of section 841(b)(1)(A) and argued below that he should have been sentenced under section 841(b)(1)(B). Since that argument presents an abstract legal question, our review is plenary. United States v. Conley, 156 F.3d 78, 82 (1st Cir. 1998). The same holds true for the appellant's cocaine base/cocaine powder "disparity" argument. See United States v. Gifford, 17 F.3d 462, 471-72 (1st Cir. 1994) (holding that questions involving the constitutionality of statutes engender plenary review). In contrast, the appellant's three Apprendi-based claims are raised for the first time on appeal. As such,

our review of those claims is for plain error.  This entails a quadripartite showing:  "(1) that there was error; (2) that it was plain; (3) that the error affect[ed] substantial rights; and (4) that the error affected the fairness, integrity, or public reputation of judicial proceedings."  United States v. Gomez, 255 F.3d 31, 42 (1st Cir. 2001).

## B.

### Necessary Background

Before grappling with the appellant's contentions, we offer some background.  Pre-Apprendi, this court had held that the drug-quantity delineations contained in 21 U.S.C. § 841(b)(1) were not elements of the corresponding offense, but, rather, sentencing factors "relevant only for determining the penalty."  United States v. Lindia, 82 F.3d 1154, 1160 (1st Cir. 1996).  Under that holding, specific drug quantities did not have to be charged in the indictment and the drug weights necessary to implement section 841(b)(1)'s penalty scheme could be determined by the sentencing judge under a preponderance-of-the-evidence standard.  Id. at 1161.  The Court's decision in Apprendi requires some rethinking of this approach.  See United States v. Robinson, 241 F.3d 115, 123 (1st Cir. 2001) (explaining that Apprendi "shifted the tectonic plates insofar as criminal sentencing is concerned").

-8-

The core holding of <u>Apprendi</u> is that, apart from the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must both be charged in the indictment and submitted to a jury for a determination under the beyond-a-reasonable-doubt standard. <u>Apprendi</u>, 530 U.S. at 490. Under this holding, a finding of drug quantity which increases a defendant's sentence beyond the otherwise applicable statutory maximum must be proved to the jury beyond a reasonable doubt. <u>United States</u> v. <u>Westmoreland</u>, 240 F.3d 618, 631-32 (7th Cir. 2001). To that extent, then, the notion that the quantity determinations demanded by section 841(b)(1) are merely sentencing factors is no longer completely true. <u>See</u> <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 61 (1st Cir. 2001); <u>United States</u> v. <u>Doggett</u>, 230 F.3d 160, 164-65 (5th Cir. 2000).

Still, <u>Apprendi</u> does not call for full abrogation of our prior practice. In particular, the <u>Apprendi</u> doctrine offers no advantage to a defendant who is sentenced to a term less than the otherwise applicable statutory maximum. We expounded on this point in <u>United States</u> v. <u>Caba</u>, 241 F.3d 98 (1st Cir. 2001):

> By its own terms, the holding in <u>Apprendi</u> applies only when the disputed "fact" enlarges the applicable statutory maximum and the defendant's sentence exceeds the

-9-

original maximum.  For this reason, <u>Apprendi</u> simply does not apply to guideline findings (including, inter alia, drug weight calculations) that increase the defendant's sentence, but do not elevate the sentence beyond the lowest applicable statutory maximum.

<u>Id.</u> at 101 (citations omitted).  This means that when a defendant is sentenced to less than the default statutory maximum for violating section 841(a) — twenty years in prison, <u>see</u> 21 U.S.C. § 841(b)(1)(C) — <u>Apprendi</u> is irrelevant.  <u>See</u> <u>United States</u> v. <u>Terry</u>, 240 F.3d 65, 74 (1st Cir. 2001).  In such circumstances, judicial determination of drug quantity under a preponderance-of-the-evidence standard remains a viable option.  <u>See</u> <u>Caba</u>, 241 F.3d at 101; <u>United States</u> v. <u>Baltas</u>, 236 F.3d 27, 41 (1st Cir. 2001).

## <u>C.</u>

### <u>The Indictment-Based Argument</u>

<u>Apprendi</u> bears only a glancing relationship to the appellant's first argument.  The count of conviction — the text of which is annexed as an appendix to this opinion — charged the appellant with participation in a drug-trafficking conspiracy in violation of 21 U.S.C. § 846.  That statute, as pleaded here,

looks to 21 U.S.C. § 841(b)(1) as the source of applicable penalties. Since the appellant actually received a sentence below the default statutory maximum (i.e., a sentence less than the 20-year maximum delineated in 21 U.S.C. § 841(b)(1)(C)), the sentence would withstand <u>Apprendi</u> scrutiny even if the count of conviction mentioned no drug weight at all. <u>See</u>, <u>e.g.</u>, <u>Caba</u>, 241 F.3d at 101; <u>Baltas</u>, 236 F.3d at 41. That being so, it is surpassingly difficult to see how the inclusion of a wrong drug weight — a mistaken reference to section 841(b)(1)(B) rather than section 841(b)(1)(A) — would constitute reversible error under <u>Apprendi</u>. <u>See</u> <u>United States</u> v. <u>Shepard</u>, 235 F.3d 1295, 1296-97 (11th Cir. 2000) (finding <u>Apprendi</u> violation, but no prejudice, in similar circumstances, and therefore upholding the defendant's conviction and sentence).

The appellant, however, has a plausible non-<u>Apprendi</u>-based argument that gets at the same point. The grand jury chose to include a specific reference to section 841(b)(1)(B) in the count of conviction, and the appellant suggests that, given the grand jury's action, the court's decision to supplant section 841(b)(1)(B) with section 841(b)(1)(A) both usurped the grand jury's institutional prerogative and abridged his rights under the Fifth and Sixth Amendments. This was a structural error, the appellant says, warranting relief even though "it is

not certain that [he] would have received a different sentence if the district court had applied section 841(b)(1)(B)." Appellant's Brief at 10.

Although cleverly constructed, this argument fails. In general, an indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993). In an indictment for conspiring to commit an offense, however, the conspiracy is the gist of the crime, and it is therefore unnecessary to allege all the elements essential to the commission of the offense which is the object of the conspiracy. Wong Tai v. United States, 273 U.S. 77, 81 (1927); Yefsky, 994 F.2d at 893. The specification of a penalty provision for the underlying offense was, therefore, not essential to the validity of the conspiracy count.

This leads to two conclusions. First, because the court's use of section 841(b)(1)(A) rather than section 841(b)(1)(B) left the substance of the charge unaffected, the switch did not usurp the prerogative of the grand jury. See United States v. Kegler, 724 F.2d 190, 194 (D.C. Cir. 1983). Second, since the mistaken reference to section 841(b)(1)(B) was

-12-

obviously intended to give the appellant notice of the potential punishment that awaited him, the switch to section 841(b)(1)(A) did not constitute reversible error unless it deprived the appellant of notice or otherwise misled him to his detriment. Cf. United States v. Burnett, 582 F.2d 436, 438 (8th Cir. 1976) (stating that "[p]rejudice to the defendant must be present before an amendment [to an indictment] is held impermissible").

The latter conclusion is reinforced by Federal Rule of Criminal Procedure 7(c)(1), which requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." (emphasis supplied). Pertinently, the rule goes on to state that whereas an indictment "shall state for each count the official or customary citation of the statute . . . which the defendant is alleged therein to have violated," nonetheless, "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment . . . or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." Fed. R. Crim. P. 7(c)(1). The question, then, is whether the mistaken reference to section 841(b)(1)(B) prejudiced the appellant.

The answer to this question plainly is in the negative. When the district court determined that section 841(b)(1)(B) was

not the appropriate penalty provision for this case, the court promptly advised the appellant of that fact and offered him an opportunity to withdraw his guilty plea. After deliberation and consultation with counsel, the appellant declined. His decision to go forward was fully informed; he knew at that point that the court planned to employ the penalty provision of section 841(b)(1)(A). Because the court gave the appellant what amounted to amended notice, the indictment's mistaken reference to section 841(b)(1)(B) did not mislead him.[3]

### D.

### The Remaining Apprendi Arguments

The appellant's remaining _Apprendi_ arguments need not detain us. His assertion that _Apprendi_ required the district court to apply section 841(b)(1)(B) in this case founders because that statute provides for sentences of up to 40 years, and the district court actually sentenced the appellant to serve 66 months — a figure well below the statute's maximum. Indeed, the sentence imposed is considerably less than the default

---

[3]The repetition of the mistake in the Agreement does not profit the appellant's cause. The most that can be said is that the court failed to honor the parties' agreement as to what penalty provision was appropriate — and the essence of a non-binding plea agreement is that the judge may override the parties' agreements. See, e.g., United States v. Teeter, ___ F.3d ___, ___ (1st Cir. 2001) [No. 00-2332, slip op. at 26]. This is especially true of stipulations as to the matters of law. See id. at ___ [slip op. at 27].

statutory maximum of 20 years found in section 841(b)(1)(C) (which applies to detectable, but otherwise unquantified, amounts of cocaine base). Thus, no Apprendi violation inheres.[4]

The appellant attempts to parry this thrust by means of his third argument: he contends that the sentencing court's drug-quantity determination exposed him to an increased mandatory minimum sentence and an increased potential maximum sentence. We recently rejected a comparable set of contentions in Robinson, where the defendant had been convicted of one count of possessing cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846. Despite the fact that no specific drug quantity was charged in the indictment (and, consequently, the jury had made no finding anent quantity), the trial court determined by a preponderance of the evidence that 35.33 grams of cocaine base was the relevant drug weight for sentencing purposes. Robinson, 241 F.3d at 117. On appeal, the defendant claimed, inter alia, that this determination violated Apprendi by triggering a higher minimum mandatory sentence and by

_____

[4]To the extent, if at all, that the court's pre-departure base — 120 months — may be germane here, that figure too is well below the default statutory maximum contained in 21 U.S.C. § 841(b)(1)(C). It is even further removed from the maximum penalty permissible under 21 U.S.C. § 841(b)(1)(B).

exposing her to a significantly higher maximum sentence.  Id. at 119.

We rejected the first half of this claim, noting that the Apprendi Court, 530 U.S. at 487 n.13, had taken pains to preserve the authority of McMillan v. Pennsylvania, 477 U.S. 79, 81-84 (1986) (upholding a state statute that required a mandatory minimum sentence based solely on a judge's preponderance-of-the-evidence findings).  Robinson, 241 F.3d at 122.  We explained that "since McMillan clearly allows a fact that triggers a mandatory minimum sentence to be found by a judge using a preponderance-of-the-evidence standard as long as the mandatory minimum does not exceed the otherwise applicable statutory maximum, it forecloses [any argument that such mandatory minimums violate Apprendi]."  Id.

We also rebuffed the second half of the defendant's claim.  In ruling that mere exposure to a higher potential sentence does not violate Apprendi, we made it pellucid that the Apprendi doctrine was concerned with actual sentences as opposed to potential sentences.  See id. at 121 (explaining that "theoretical exposure to a higher sentence, unaccompanied by the imposition of a sentence that in fact exceeds the otherwise-applicable statutory maximum, is of no consequence").

Although the appellant labels his fourth argument as Apprendi-based and we have accepted his taxonomy, we are at a loss to fathom how Apprendi figures into it — and the Apprendi link is not developed in the appellant's brief. The argument derives from the district court's imposition of a sentence based on a drug quantity for which the appellant admitted he was "responsible." Refined to bare essence, the appellant asserts that a drug-quantity stipulation made for the purpose of determining a defendant's base offense level (BOL) is not competent proof of the amount of drugs "involved" in the offense of conviction for the purpose of fixing the applicable mandatory minimum under 21 U.S.C. § 841(b).

This argument runs contrary to circuit precedent: we generally have allowed a single drug-quantity calculation to serve as the basis for determining both the BOL and the level of penalty to be imposed. See Lindia, 82 F.3d at 1160 (citing USSG §2D1.1 cmt. (n.12)); United States v. Muniz, 49 F.3d 36, 39-40 (1st Cir. 1995) (similar); United States v. Pion, 25 F.3d 18, 25 n.12 (1st Cir. 1994) (similar).[5] Apprendi has no discernible

_____

[5]Use of the same drug-quantity calculation for determining both a mandatory minimum sentence and the defendant's BOL has been approved without discussion in a long list of cases. E.g., Robinson, 241 F.3d at 117-18; United States v. Alicea-Cardoza, 132 F.3d 1, 6 (1st Cir. 1997); United States v. Miranda-Santiago, 96 F.3d 517, 520, 525 (1st Cir. 1996); United States v. Tavano, 12 F.3d 301, 307 (1st Cir. 1993).

-17-

bearing on the validity of this line of cases, and we are bound to follow them.  See United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (discussing duty of newly-constituted panel in a multi-panel circuit to adhere to rulings of prior panels, absent special circumstances).

To be sure, there may be instances in which we might consider requiring separate drug-quantity determinations.  In United States v. Winston, 37 F.3d 235 (6th Cir. 1994), for example, the court was concerned with whether it could aggregate multiple drug counts when considering whether 21 U.S.C. § 841(b)(1)(A) demanded the imposition of a mandatory minimum sentence.  To cope with this peculiar problem, the court required disaggregation (and, hence, separate determinations). Id. at 241 n.10.  But Winston — the only case cited by the appellant on this point — is clearly inapposite here:  the appellant was convicted and sentenced on only a single count, and this case presents no comparable question of aggregation.

Another possible exception to the general rule might arise where the sentencing guidelines and the statute that fixes a mandatory minimum sentence provide differing mandates.  For example, the method of determining the amount of lysergic acid diethylamide (LSD) necessary to trigger a mandatory minimum sentence differs from the method specified by the guidelines for

determining a defendant's BOL.  See Neal v. United States, 516

U.S. 284, 295-96 (1996); United States v. Boot, 25 F.3d 52, 53-

54 (1st Cir. 1994); cf. United States v. Scalia, 993 F.2d 984,

988 (1st Cir. 1993) (explaining divergent treatment of marijuana

due to a distinction between the use of the number of plants to

determine the statutory mandatory minimum and the use of the

total weight of the plants to determine the BOL).  Once again,

the appellant's case does not involve such discrepant standards.

We have said enough on this score.  We adhere to our

general rule that, absent special circumstances, drug-quantity

determinations can be used interchangeably for both statutory

penalty and guideline sentencing purposes.  As the appellant has

failed to bring his case within any recognized exception to this

rule, we reject his claim that the lower court erred in

eschewing an entirely separate drug-quantity determination for

the purpose of identifying the applicable statutory penalty

provision.

## E.

### The Equal Protection Claim

This leaves the appellant's constitutional challenge.

The statutes criminalizing drug trafficking and the ancillary

sentencing guidelines admittedly attach much harsher penalties

to the distribution of cocaine base than to the distribution of

like quantities of powdered cocaine.  Compare, e.g., 21 U.S.C. 841(b)(1)(A)(ii) (setting penalties for trafficking in five kilograms or more of cocaine powder), with, e.g., id. 841(b)(1)(A)(iii) (setting the same level of penalties for trafficking in 50 grams or more of cocaine base).  The appellant asseverates that this tiered treatment has an impermissible disparate impact on African-Americans, thereby violating the Equal Protection Clause.

We addressed this precise issue in United States v. Singleterry, 29 F.3d 733 (1st Cir. 1994), in which we rejected the claim of unconstitutional treatment because we found "insufficient evidence that the distinction drawn between cocaine base and cocaine was motivated by any racial animus or discriminatory intent on the part of either Congress or the Sentencing Commission."  Id. at 741 (internal citations and quotation marks omitted).  The appellant has offered us nothing new, and we are thus bound to follow our earlier ruling.  See Wogan, 938 F.2d at 1449 (discussing "law of the circuit" doctrine).  Consequently, although we recognize the severity of the penalty paradigm vis-à-vis crack cocaine, we must uphold it.

## III.

## Conclusion

We need go no further. As the appellant has failed to show reversible error, we have no reason to disturb his sentence.

**<u>Affirmed</u>.**

## APPENDIX

## INDICTMENT — COUNT ONE

The Grand Jury charges that:

\*             \*             \*

From in or about December 1997 until on or about December 9, 1999, in the District of Maine, defendant

### KENNETH J. EIRBY

willfully, knowingly, and intentionally combined, conspired, confederated and agreed with others to commit offenses against the United States, that is, to unlawfully, knowingly, and intentionally distribute and possess with intent to distribute five grams or more of substances containing cocaine base, a Schedule II controlled substance listed in Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B);

All in violation of Title 21, United States Code, Section 846.