UNITED STATES of America

v.

Terry W. CASE, Defendant

No. 01–68–P–H.

United States District Court,
D. Maine.

Aug. 21, 2002.

Jonathan R. Chapman, Ass't United States Attorney, Office of the U.S. Attor-

ney, Portland, ME, for United States of America.

Bruce M. Merrill, Portland, ME, for Terrence Warner Glaum aka Smitty aka Terrence Glaum aka Terry W Case, defendants.

## DECISION AND ORDER ON PENDING GUIDELINE SENTENCING ISSUES

HORNBY, Chief Judge.

I presided at a jury trial in which the jury convicted the defendant Case of conspiracy to distribute marijuana and/or to possess marijuana with the intent to distribute it. The jury also answered a special interrogatory, crafted because of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), finding that the conspiracy involved 100 kilograms or more of marijuana, not 1,000 kilograms or more as the Government had charged. After *Apprendi*, the statutory sentencing cap is therefore 40 years under 21 U.S.C. § 841(b)(1)(B). But the parties disagree over whether the statutory minimum is 10 years (section 841(b)(1)(A)) or 5 years (section 841(b)(1)(B)); what drug quantity is attributable to the defendant as relevant conduct under the Sentencing Guidelines; whether the defendant should receive an enhancement or reduction for his role in the offense; whether he should receive a reduction for acceptance of responsibility, having earlier offered to plead guilty to a charge of 100 kilograms or more, but having refused to plead guilty to the larger amount charged; and whether there was sentencing entrapment. They have agreed that I can determine these issues from the record at trial and the presentence report.

I have studied their legal memoranda on the issues, and now make the following determinations. I start with the Guideline questions, because they may determine whether the statutory minimum issue is real or moot.

### Relevant Conduct For Guideline Purposes

█ For Guideline purposes, I use a preponderance of the evidence standard, *United States v. Batista*, 239 F.3d 16, 21 (1st Cir.2001), not the reasonable doubt standard that bound the jury's determination. There were two key witnesses: Anthony Salsberry, the leader of the conspiracy who had been arrested and decided to cooperate; and Paul Wolf, the DEA agent. Through agents' testimony, recorded conversations of the defendant Case himself and of co-conspirator Monroe[1] were also admitted. I find Salsberry's testimony reliable in describing the broad outlines of the conspiracy and the participants, and the particular transactions he worked on. I think it likely, however, that at the margin he may have painted a larger rather than smaller role for Case because Salsberry is intimately familiar with the criminal justice system, knows how cooperation and downward departures work, has himself been confronting a very substantial sentence, and has a criminal history that makes me view his testimony with a skeptical eye. I find Agent Wolf's testimony credible, despite the defendant Case's efforts at trial to discredit it because of the fact that some conversations were not recorded. With respect to the defendant Case's and Monroe's own statements, which are incriminating on both guilt and quantity, Case argues that he was largely

---

1. Eugene Monroe was indicted, but suffered a stroke after arrest. He was ultimately found incompetent to stand trial and unlikely to achieve competence in the foreseeable future and was discharged. *United States v. Monroe*, No. CR–01–68 (D.Me. May 17, 2002) (Judgment of Discharge). He did not testify.

puffing, stringing the agent along and following a script that Salsberry laid out in telephone conversations that preceded and followed Case's contacts with Wolf. Def. Br. at 12. In fact, I find Case's and Monroe's recorded statements largely credible, subject only to the ordinary hyperbole that drug dealers sometimes engage in. The argument that Salsberry orchestrated everything Case said to Wolf to enhance Salsberry's own position as a cooperator is nothing but speculation.

With that background, I make the following drug quantity findings.

1. As I have said, I find the recorded statements of Case and Monroe largely reliable. Accounting for hyperbole, I find the following quantities to be relevant conduct. On February 18, 2001, Case told the agent that he had 300 pounds of marijuana.[2] Govt. Ex. 4 at 2, 8. On July 16, 2001, he told the agent that he deals 400–500 pounds every two weeks (taking the minimum possible, that is two weeks of 400 pounds each for an addition of 800), sometimes 600 pounds in one week (an addition of 600) and usually has 600–800 pounds in his warehouse.[3] Govt. Ex. 10 at 9, 14. He stated that Monroe had "probably about" 100 pounds available at that time (an addition of 100). Govt. Ex. 10 at 24. On July 23, Case had 120 pounds, according to Monroe (an addition of 120). Govt. Ex. 11 at 8. On July 25, Monroe told the agent

that Case had just received 400 "units" (an addition of 400 pounds). Govt. Ex. 16 at 2. That totals 2,320 pounds, or 1,052 kilograms.[4]

■ Under United States Sentencing Guideline ("USSG") § 2D1.1(c)(4) (2001) that quantity yields a Base Offense Level of 32. Before I make a finding on the so-called one-ton deal[5] with Martino and the 1,800–pound load, I wish to hear argument in light of the discussion that follows.

### Role Enhancement or Reduction

The government seems to argue that if I treat all the drug quantity, including the two large deals, as relevant conduct, Case should get a 2–level role reduction under USSG § 3B1.2(b) because his role was minor (Case seeks a 4–level reduction for minimal role under USSG § 3B1.2(a)), but that if I leave out the one-ton and 1,800–pound deals and charge him with only the 2,320 pounds I have computed above, he should receive no such reduction, but instead a 2–level enhancement under USSG § 3B1.1 as a manager or supervisor. Govt. Br. at 11. If the government is correct, the defendant would be better off by not contesting the larger quantities, for the base offense level remains 32 regardless (2,320 pounds + 2,000 pounds + 1,800 pounds = 6,120 pounds or 2,776 kilograms). The level would be reduced to 30 under the government's role reduction ar-

---

2. The credibility of this statement is reinforced by Case's March 1 offer to Agent Gustafson to show her 200 pounds.

3. Although Case was likely puffing about regularly warehousing 800 pounds of marijuana, there is sufficient evidence to support his having distributed the amounts listed above.

4. These amounts may encompass the conceded amounts shipped and obtained by the agents (125.2 pounds). They also may include the amounts supported by shipping documents that the government seized. (Con-

trary to the defendant's argument, I find these documents to be very persuasive of drug quantities shipped.) Therefore, I choose not to count these amounts separately.

I reject the defendant's separate conspiracy argument. Def. Br. at 8–10.

5. Although Salsberry testified that he was initially working on a two-ton deal with Martino, the government concedes that the defendant can be held responsible at most for one ton, Def. Br. at 5 & Table 1, possibly because that is all the suppliers would provide.

gument (28 under the defendant's), but if the smaller quantity is chosen, the 32 would be raised to 34. I want to hear argument on the correctness of such an analysis and alternatively on whether both 3B1.1 and 3B1.2 can apply to the same defendant. *See, e.g., United States v. Jackson,* 207 F.3d 910, 922 (7th Cir.2000); *United States v. Tsai,* 954 F.2d 155, 167 (3d Cir.1992).

### ACCEPTANCE OF RESPONSIBILITY

Before trial, the defendant apparently offered to plead guilty to 100 kilograms or more but not 1,000 kilograms or more (*i.e.,* 220 pounds to about 2,200 pounds). Def. Br. at 16. At trial and now, he concedes only the 125.2 pound (57 kilograms) shipments. Def. Br. at 17. He argues that the government would not agree to the plea (he could not enter the plea without agreement because a superseding indictment charging 1,000 kilograms or more had been filed) and there was no other way to admit his guilt and challenge the quantity except by proceeding to trial. *Cf.* USSG § 3E1.1, app. n. 2 (allowing acceptance "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt"). He also contends that the jury vindicated his position by finding that the conspiracy did *not* involve 1,000 kilograms or more, but only 100 kilograms or more. Def. Br. at 16.

Certainly admitting only 125.2 pounds at trial is not acceptance. But the defendant apparently was willing to plead to 220 to 2,200 pounds if the Government would accept the plea, and the Application Note says that "a determination that a defendant has accepted responsibility will be based primarily on pre-trial statements and conduct." USSG § 3E1.1, app. n. 2. Because the numbers are potentially so close, I reserve decision on this issue pending argument.

### STATUTORY MINIMUM

After *Harris v. United States,* —— U.S. ——, 122 S.Ct. 2684, 153 L.Ed.2d 855 (2002), it is clear that *Apprendi* does not control statutory minimums, only maximums. There may be an argument that the drug statute, 21 U.S.C. § 841, creates separate crimes for various quantities. The Supreme Court has held that carjacking's enhanced penalty for serious bodily injury or death amounts to a separate crime to be indicted and proven beyond a reasonable doubt. *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). If the drug statute is to be treated like the carjacking statute, the jury verdict would determine both minimums and maximums. (I have held to the contrary in an oral ruling, in imposing sentence in *United States v. Goodine,* No. CR–01–25 (D.Me. Aug. 1, 2002)). But it may be that I need not confront that issue here. It is undisputed that the defendant's Criminal History is Category I. Therefore, only if his total offense level ends up below 32 will the 10–year statutory minimum argument be relevant. (There are no grounds for downward departure.) Only then would I confront the interesting question whether the Guideline term "relevant conduct" reaches the same quantities as the statutory term "involved in" (A pre-*Harris* First Circuit decision says they are the same. *United States v. Eirby,* 262 F.3d 31, 40 (1st Cir.2001).) and the effect, if any, of the jury verdict on quantity. The total offense level here will be controlled by what I do on the role enhancement/reduction and acceptance. I therefore reserve decision until I hear the lawyers orally.

### SENTENCING ENTRAPMENT

Case argues that he should be held responsible for no marijuana after February

26, 2001 (2,020 pounds of the 2,320 pounds computed above). He maintains that, because agents could have arrested him for an earlier 10–pound deal, they could not continue to buy drugs from him and hold them against him. In fact, however, the only portion of the 2,320 pounds representing sales encouraged by agents is the 125.2 pounds that Case has conceded. All the rest reflects amounts that Case and Monroe were apparently dealing to others. Moreover, only through their efforts after February 21 did agents learn of Eugene Monroe and of the shipping company they used as a front. There is no sentencing entrapment here. *United States v. Montoya,* 62 F.3d 1 (1st Cir.1995).

To summarize: Case is responsible for at least 2,320 pounds or 1,052 kilograms of marijuana. I wait to hear further argument on Guidelines 3B1.1(c), 3B1.2 and 3E1.1(a).

So ORDERED.