# United States Court of Appeals
## For the First Circuit

No. 07-1062

UNITED STATES OF AMERICA,

Appellee,

v.

KENNETH J. EIRBY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya and Siler,* Senior Circuit Judges.

Edward S. MacColl, with whom Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., was on brief, for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

February 7, 2008

*Of the Sixth Circuit, sitting by designation.

**SELYA**, **Senior Circuit Judge**. Defendant-appellant Kenneth J. Eirby appeals from an order revoking his supervised release term and imposing an additional thirty-three months of immurement. He contends that the district court erred in (i) failing to recognize that the Sixth Amendment, as interpreted in a line of recent Supreme Court decisions, applies to revocation proceedings and the consequent imposition of additional prison time; (ii) mischaracterizing his underlying offense of conviction; and (iii) misclassifying the conduct that comprised his supervised release violation. Concluding, as a matter of first impression, that a conviction under the Maine statute violated by the appellant, 17-A M.R.S.A. § 254(1)(A-2), is a crime of violence and finding the appellant's other claims of error equally unpersuasive, we affirm the judgment below.

## I. BACKGROUND

We assume the reader's familiarity with our earlier opinion upholding the appellant's original conviction and sentence on direct review. See United States v. Eirby (Eirby I), 262 F.3d 31 (1st Cir. 2001). Consequently, we rehearse here only those facts directly pertinent to this appeal.

In 1999, the authorities caught the appellant red-handed as he tried to peddle drugs. A federal grand jury returned an indictment and, in due course, the appellant pleaded guilty to count 1 of that indictment. That count, the text of which is

reproduced in an appendix to our opinion in Eirby I, id. at 41, charged the appellant with conspiring to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 846 & 841(a)(1).

Following the district court's acceptance of the guilty plea, a dispute arose regarding the applicable sentencing provision. To understand that dispute, it is important to recall that 21 U.S.C. § 841(b)(1) sets out a three-tiered type-and-quantity-driven sentencing regime for violations of section 841(a)(1). The least onerous of these tiers, set out in section 841(b)(1)(C), prescribes the penalties that apply when only relatively small amounts of drugs are implicated or when no drug quantity is specified. That tier is not in issue here, and we make no further reference to it.

The remaining two tiers, set out in sections 841(b)(1)(A) and 841(b)(1)(B), respectively, prescribe differing penalties depending upon drug type and quantity. On the one hand, section 841(b)(1)(A) provides a sentencing span ranging from ten years to life imprisonment for covered offenses involving fifty or more grams of cocaine base. On the other hand, section 841(b)(1)(B) establishes a sentencing span ranging from five to forty years for covered offenses involving five or more grams of cocaine base (but less than fifty grams).

In the instant case, both the indictment and the written plea agreement referenced section 841(b)(1)(B). Nevertheless, the

district court realized, after reviewing the presentence investigation report (PSI Report), that the quantity of drugs involved implicated section 841(b)(1)(A). Recognizing that the indictment mentioned section 841(b)(1)(B), but not section 841(b)(1)(A), the court invited the appellant to withdraw his plea. After a five-week period of contemplation, the appellant declined the invitation.

At the disposition hearing, the court — relying on the PSI Report and a stipulation — found the appellant responsible for one hundred forty-seven grams of cocaine base.[1] The court then concluded, over objection, that this drug quantity placed the appellant under the aegis of section 841(b)(1)(A) for sentencing purposes. After placing the appellant in criminal history category II and granting a three-level reduction for acceptance of responsibility, USSG §3E1.1, the court fixed the guideline sentencing range at 97-121 months. It then acknowledged the applicability of a ten-year mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(A); departed downward for substantial assistance, USSG §5K1.1; and imposed a sixty-six month incarcerative sentence, to be followed by five years of supervised release. The court subjected the latter term to the standard supervised release conditions,

---

[1]The parties stipulated that the appellant was responsible for between fifty and one hundred fifty grams of cocaine base. Eirby I, 262 F.3d at 35.

including a prohibition against the commission of future crimes. See 18 U.S.C. § 3583(d).

On direct review, the appellant argued that the district court's decision to sentence him under section 841(b)(1)(A), rather than section 841(b)(1)(B), usurped the grand jury's institutional prerogatives. We rejected that argument, emphasizing that the indictment's reference to section 841(b)(1)(B) was intended to place the appellant on notice of the range of possible penalties and that the appellant had suffered no prejudice because the district court had afforded him an opportunity to withdraw his plea. Eirby I, 262 F.3d at 37-38.

At the same time, we rejected the appellant's claim of Apprendi error. See Apprendi v. New Jersey, 530 U.S. 466 (2000). We observed that while Apprendi established that "a finding of drug quantity which increases a defendant's sentence beyond the otherwise applicable statutory maximum must be proved to the jury beyond a reasonable doubt," Eirby I, 262 F.3d at 36, the sentence appealed from was well below section 841(b)(1)(B)'s forty-year maximum. Id. at 38-39. In that connection, we made short shrift of the appellant's claim that the application of section 841(b)(1)(A) subjected him to a higher potential sentence, noting that "the Apprendi doctrine [is] concerned with actual sentences as opposed to potential sentences." Id. at 39 (emphasis in original).

Having lost his appeal, the appellant proceeded to serve his sentence. We fast-forward to December of 2005 — a point some seven months after his release from prison and the commencement of his term of supervised release. At that time, Maine state authorities charged that he, then thirty-nine years of age, had unlawfully engaged in sex acts with a fourteen-year-old girl. A state grand jury followed up with a five-count indictment. Pertinently, count 5 of that indictment charged the appellant with sexual abuse of a minor in violation of 17-A M.R.S.A. § 254(1)(A-2).

In due season, the appellant pleaded guilty to three of the state counts (including count 5). The state court sentenced him to four years in prison. Shortly thereafter, a federal probation officer petitioned the district court to revoke the appellant's supervised release.

At the revocation hearing, the district court rejected the appellant's demand for a jury trial. The court then found a violation of the "criminal activity" prohibition and revoked the appellant's supervised release term. See USSG §7B1.3(a)(1). Concluding that the underlying conspiracy conviction was for a Class A felony, 18 U.S.C. § 3559(a)(1), and that the state conviction constituted a Grade A violation of supervised release because it was a crime of violence, USSG §§4B1.2(a), 7B1.1(a)(1)(A)(i), the court sentenced the appellant to an

additional incarcerative term of thirty-three months, consecutive to his state sentence. This timely appeal ensued.

## II. ANALYSIS

Before us, the appellant advances three assignments of error. These embody the district court's refusal to recognize the applicability of the Sixth Amendment in the revocation proceedings, its characterization of his underlying conspiracy conviction as a Class A felony, and its classification of his state conviction as a Grade A violation of supervised release. We address these contentions sequentially.

### A. The Sixth Amendment.

The appellant's first claim of error is premised on the notion that the district court violated his Sixth Amendment rights when it denied him a trial by jury with respect to the revocation proceeding. As we explain below, this claim is jejune.

It is settled law that once a court imposes a fixed sentence in a criminal case, subsequent proceedings in regard to that sentence are not subject to the full panoply of Sixth Amendment protections. See Johnson v. United States, 529 U.S. 694, 700 (2000) (supervised release); Morrissey v. Brewer, 408 U.S. 471, 480-81 (1972) (parole). Mindful of these decisions, we held squarely in United States v. Work, 409 F.3d 484 (1st Cir. 2005), that the Sixth Amendment's right to trial by jury does not extend to supervised release revocation proceedings. See id. at 491-92.

-7-

That ends the matter: in a multi-panel circuit, a newly constituted panel ordinarily is bound by prior panel decisions directly or closely on point. See, e.g., Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 18 (1st Cir. 2006); United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005).

The appellant attempts to confess and avoid. Even though he acknowledges that Work is materially indistinguishable from the case at hand, he points out that there is a narrow exception to the "law of the circuit" rule in the event of supervening authority from, say, a higher court. See United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001) (framing exception in terms of "a controlling intervening event"). Based on this exception, he exhorts us to reconsider Work in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 244 (2005). That exhortation has little to commend it.

First and foremost, the appellant's time line is muddled. Booker does not post-date Work; indeed, the Work court explicitly rejected a claim that the district court had committed Booker error in imposing sentence. See Work, 409 F.3d at 492.

At any rate, Booker in no way undermines Work's legal foundation. Booker did not presume to overturn the limited applicability of Sixth Amendment protections in post-sentence proceedings. Cases to that effect, of which Johnson, 529 U.S. at

700, and Morrissey, 408 U.S. at 480-81, are exemplars, remain good law.

To be sure, the appellant takes a contrary view. He insists that Booker signaled a shift in the tectonic plates of federal sentencing jurisprudence, requiring that all factual findings that impact any aspect of a criminal defendant's sentence must be made by a jury. That argument is neither original nor convincing, and we previously have rejected such an expansive interpretation of Booker. See, e.g., United States v. Lizardo, 445 F.3d 73, 90 (1st Cir. 2006); United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005). We reaffirm those holdings today.

The short of it is that Booker constrains judicial factfinding only in a mandatory guideline sentencing regime. See Antonakopoulos, 399 F.3d at 75. The guidelines governing the revocation of supervised release, USSG §§7B1.1-7B1.5, have always been advisory. See United States v. O'Neil, 11 F.3d 292, 301 n.11 (1st Cir. 1993); see also Work, 409 F.3d at 492. Thus, no conceivable Booker error transpired here.

## B.  **Class A Felony**.

The appellant's next assignment of error challenges the sentencing court's characterization of his underlying conspiracy conviction as a conviction for a Class A felony. We review this quintessentially legal determination de novo. See United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005).

We begin with a sketch of the pertinent legal landscape. The governing statute authorizes reincarceration for violations of supervised release conditions. See 18 U.S.C. § 3583(e)(3). The statutory scheme also establishes ceilings on the lengths of new imprisonment terms. See id. These ceilings depend in part on the seriousness of the underlying offense of conviction. See United States v. Tapia-Escalera, 356 F.3d 181, 185 (1st Cir. 2004). The sentencing guidelines contain a similar calibration. See USSG §7B1.4.

The gravity of an underlying offense, for both statutory and guideline purposes, is measured through the lens of 18 U.S.C. § 3559(a), which establishes a letter-grade classification regime. Under this taxonomy, offenses carrying a maximum penalty of life imprisonment are categorized as Class A felonies. Id. § 3559(a)(1). Those carrying maximum terms of twenty-five years or more but less than life imprisonment are categorized as Class B felonies.[2] Id. § 3559(a)(2). Supervised release violators who stand convicted of Class A felonies can receive additional sentences of up to five years. Id. § 3583(e)(3). Those who stand convicted of Class B felonies are subject to additional sentences of up to three years. Id.

---

[2]Other parts of the taxonomy are not relevant here. Consequently, we do not discuss them.

The district court determined that the appellant had committed a Class A felony because he had been sentenced under 21 U.S.C. § 841(b)(1)(A), which provides for a maximum sentence of life imprisonment. In endeavoring to impeach this determination, the appellant resurrects a claim advanced in his earlier appeal: that he was entitled to be sentenced under section 841(b)(1)(B), not section 841(b)(1)(A). Building on that foundation, he argues that since a life sentence was never "authorized" under the appropriate penalty provision, he should have been treated as having committed a Class B felony.[3]

The appellant's attempt to pin his hopes on section 841(b)(1)(B) failed in his earlier appeal, and his arguments are no more robust the second time around. In Eirby I, we rejected this claim and affirmed the underlying conviction and sentence under section 841(b)(1)(A). See Eirby I, 262 F.3d at 37-39. The appellant cannot employ his present appeal as a vehicle for mounting a collateral attack on that holding. See, e.g., United States v. Pérez-Ruiz, 421 F.3d 11, 14 (1st Cir. 2005); United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004).

In all events, the appellant's effort to countermand our earlier opinion rests on an insupportable premise: the misguided

---

[3]The court sentenced the appellant to an additional term of imprisonment (thirty-three months) that was within the compendium of sentences allowed for violators who originally had committed Class B felonies. We assume arguendo, but do not decide, that this ground of appeal is not rendered moot by that circumstance.

-11-

notion that Eirby I held that the appellant could not have been sentenced above the forty-year ceiling imposed by section 841(b)(1)(B). We made no such holding in Eirby I — and the appellant's argument to the contrary entails a gross misreading of that decision.

There, we emphasized that an Apprendi error cannot occur unless the sentence actually imposed is greater than the otherwise applicable statutory maximum. See Eirby I, 262 F.3d at 37. Since the sentence actually imposed by the district court fell below the maximum authorized by either section 841(b)(1)(A) or section 841(b)(1)(B), no Apprendi error occurred. Id. at 37, 39. We expressed no opinion about the constitutionality vel non of imposing a sentence above section 841(b)(1)(B)'s forty-year ceiling.

Moreover, our decision never concluded — nor even intimated — that section 841(b)(1)(B) was the correct sentencing provision. The opposite is true; we repeatedly characterized the indictment's reference to section 841(b)(1)(B) as "mistaken." Id. at 37, 38.

Although it may be frosting on the cake, we add that there could have been no Apprendi error in the original sentence. The record makes manifest that the sentence actually imposed was anchored in the appellant's own admission: before being sentenced on the conspiracy charge, he stipulated that he was responsible for

between fifty and one hundred fifty grams of cocaine base. Thus, the factual finding that the appellant was responsible for a quantity of cocaine base sufficient to trigger section 841(b)(1)(A) was within the contemplation of the facts to which the appellant admitted. Factfinding premised on a defendant's admissions is not a practice invalidated by Apprendi.[4] See United States v. Buonocore, 416 F.3d 1124, 1134 (10th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1329-30 (11th Cir. 2005); see also Booker, 543 U.S. at 244.

### C.  Crime of Violence.

The appellant's last assignment of error concerns the classification of his sex crime (count 5 of the state court indictment) as a crime of violence (and, thus, a Grade A violation of his supervised release). In order to gain perspective, we repair to the applicable sentencing guidelines.

Beyond the "class" of the original offense of conviction, the lawful ambit of a supervised release revocation sentence depends on the "grade" of the crime comprising the supervised

---

[4]The appellant makes a belated claim that the sentencing court's decision to treat him as having committed a Class A felony "prejudices" him and suggests that this "prejudice" raises Apprendi concerns. Appellant's Reply Br. at 7. This argument is so confusingly constructed and lacking in coherence that we deem it abandoned. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). To cinch matters, issues (like this one) advanced for the first time in an appellant's reply brief are deemed to have been waived. See Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 183 (1st Cir. 2006); Cipes v. Mikasa, Inc., 439 F.3d 52, 55 (1st Cir. 2006).

release violation.  See USSG §7B1.4.  Pertinently, a Grade A violation includes "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence."  Id. §7B1.1(a)(1)(A)(i).  The guidelines define a crime of violence in part as an offense embodying conduct that "presents a serious potential risk of physical injury to another." Id. §4B1.2(a)(2).

We review classification disputes, like this one, de novo.  See United States v. Richards, 456 F.3d 260, 262 (1st Cir. 2006).  In doing so, we employ a categorical approach to determine whether a given offense constitutes a crime of violence.  See Taylor v. United States, 495 U.S. 575, 600 (1990); United States v. Sherwood, 156 F.3d 219, 221 (1st Cir. 1998).[5]

The categorical approach entails a two-step pavane. First, an inquiring court must examine the text of the statute of conviction to ascertain whether a violation of that statute necessarily involves every element of a violent crime.  See Taylor, 495 U.S. at 600; Sherwood, 156 F.3d at 221.  If the answer is unambiguously "yes" or "no," the inquiry ends.  If, however, the

---

[5]Although the issue in Taylor was whether an offense constituted a "violent felony" under the Armed Career Criminal Act, we repeatedly have observed that the terms "crime of violence" and "violent felony" are mirror images of each other and, consequently, cases construing one are instructive with respect to the scope of the other.  See Richards, 456 F.3d at 263 n.2; United States v. Meader, 118 F.3d 876, 882 n.8 (1st Cir. 1997); United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994).

statute's language is broad enough to encompass both acts that constitute violent crimes and acts that do not, the court must take a second step and determine whether the record of conviction reveals all the elements of a violent crime. See Shepard v. United States, 544 U.S. 13, 17 (2005); Taylor, 495 U.S. at 602.

Against this backdrop, we turn to count 5 of the state court indictment. In connection with that count, the appellant pleaded guilty to violating a statute that makes it a crime for a person to "engage[] in a sexual act with another person, not the actor's spouse, who is either 14 or 15 years of age and the actor . . . is at least 10 years older than the other person." 17-A M.R.S.A. § 254(1)(A-2).[6] Maine law defines a "sexual act" in relevant part as "any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other." Id. § 251(1)(C)(1).

In our view, the conduct criminalized by section 254(1)(A-2) categorically poses a serious risk of physical injury. Several factors lead us to this conclusion.

For one thing, there is a significant risk that force will be used to perpetrate the crime. After all, child-molestation crimes "typically occur in close quarters, and are generally

_____

[6]Under Maine law, violations of statutes of this genre are punishable by terms of imprisonment not to exceed five years. See 17-A M.R.S.A. § 1252(2)(C).

-15-

perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures." Sherwood, 156 F.3d at 221 (citing United States v. Velazquez-Overa, 100 F.3d 418, 422 (5th Cir. 1996)).

For another thing, precedent militates strongly in favor of this outcome. We consistently have held comparable offenses to pose a serious risk of physical injury. For example, in Sherwood we answered affirmatively the question of whether a child-molestation statute that criminalized sexual contact with a person under the age of thirteen constituted a crime of violence. Sherwood, 156 F.3d at 221-22. So too in Richards, where we addressed the question of whether a statute that criminalized sexual contact between a child thirteen or younger and someone at least three years older comprised a violent felony. Richards, 456 F.3d at 260. In each of these instances, we found that the statute described an offense that categorically posed a serious risk of physical injury to others.

Last — but far from least — the considerations that informed our holdings in these cases are equally cogent here. Those considerations include, among other things, the statutory description of the offense conduct, the baseline age of the minor, and the chronological spread between the age of the minor and the age of the perpetrator. See id. at 263-64; Sherwood, 156 F.3d at

-16-

221-22. Consistency in the use of these criteria compels the conclusion that the appellant's offense constitutes a crime of violence: the conduct proscribed by section 254(1)(A-2) is at least as grave as the conduct found to give rise to a serious risk of physical injury in Richards and Sherwood; the Maine statute requires the involvement of youthful victims with similar vulnerabilities to those protected by the statutes under consideration in these cases; and the Maine law's mandatory age differential more than triples the three-year chronological spread required by the statute in Richards.

The appellant attempts to blunt the force of this reasoning by observing that one can imagine a number of sexual acts between a fifteen-year-old girl and a man ten years her senior that are unlikely to lead to physical injury. That observation misses the mark. The overarching fact is that a serious risk of physical injury remains inherent in the proscribed conduct. From a categorical standpoint, no more is exigible to render the offense a crime of violence. Cf. Chery v. Ashcroft, 347 F.3d 404, 408 (2d Cir. 2003) ("Doubtless, cases can be imagined where a defendant's conduct does not create a genuine probability that force will be used, but the risk of force remains inherent in the offense") (emphasis in original).

Our itinerary lists one final port of call. At oral argument in this court, the appellant posited that our serial

decisions in <u>United States</u> v. <u>Sacko</u>, 178 F.3d 1 (1st Cir. 1999), <u>opinion</u> <u>after</u> <u>remand</u>, 247 F.3d 21 (1st Cir. 2001), stand for the proposition that "May and December" sex crimes (that is, sex crimes involving young girls and adult men) do not create a serious risk of physical injury unless the conduct in question includes penetration. This is whistling past the graveyard. Whatever the particular facts of the case, neither of our opinions in <u>Sacko</u> plausibly can be read to hold that penetration is a sine qua non for a finding that a "May and December" sex crime is a crime of violence. <u>See</u> <u>Sherwood</u>, 156 F.3d at 221-22 (rejecting the argument that a sex crime involving mere touching cannot give rise to a serious risk of physical injury); <u>see</u> <u>also</u> <u>Richards</u>, 456 F.3d at 265 (stating "that the two <u>Sacko</u> decisions, read together, are completely consistent with <u>Sherwood</u> and with the conclusion we reach today").[7]

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we deem the appeal groundless.

---

[7]The appellant proffers a series of Seventh Circuit cases, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Thomas</u>, 159 F.3d 296, 298-99 (7th Cir. 1998); <u>United States</u> v. <u>Shannon</u>, 110 F.3d 382, 385-89 (7th Cir. 1997) (en banc), in an endeavor to convince us to reevaluate <u>Richards</u>. <u>Richards</u> is binding on this panel and, in any event, this court previously has refused to go down the path to which the appellant points. <u>See</u> <u>Aquiar</u> v. <u>Gonzáles</u>, 438 F.3d 86, 90-91 (1st Cir. 2006).

**Affirmed**.