# United States Court of Appeals
## For the First Circuit

No. 13-1772

EDNA MARTÍNEZ-RIVERA, on her own behalf and on behalf of her minor child, RCM; LYDIA RIVERA-O'FARRIL; LYDIA MARTÍNEZ-RIVERA,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF PUERTO RICO; DEPARTMENT OF JUSTICE OF PUERTO RICO; DEPARTMENT OF LABOR AND HUMAN RESOURCES OF PUERTO RICO; VOCATIONAL REHABILITATION ADMINISTRATION; NYDIA COLÓN-ZAYAS, MYRNA CAMBRELEN, JUAN ORTIZ-ORTIZ, ENRIQUE DEL CUETO-PÉREZ, all in their official and personal capacities,

Defendants, Appellees.

————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

————————

Before
Torruella, Lipez, and Thompson,
Circuit Judges.

————————

Carlos Rodríguez García, with whom Rodríguez García PSC was on brief, for appellants.
Roberto Ariel Fernández, with whom González Castañer PSC was on brief, for appellees.

————————

January 29, 2016

————————

**THOMPSON**, <u>Circuit Judge</u>.

## Overview

Edna Martínez Rivera ("Martínez") is a former employee of Puerto Rico's Vocational Rehabilitation Administration ("VRA"), an agency tasked with integrating persons with disabilities into the workforce. Sometime after the VRA let her go, Martínez filed a federal-court suit against the defendants listed in our caption. Essentially believing that they had discriminated against her because of her disability, age, and politics, her complaint seemingly alleges various violations of federal and local law.[1] We say "essentially" and "seemingly" because her complaint is quite muddled in key ways, forcing us to spend a lot of time piecing together what claims she makes against whom (which isn't fair to other litigants waiting in line for our attention, by the way). Adding to the confusion, the district judge homed in on one federal claim (under 42 U.S.C. § 1983), concluded that it ought to be dismissed for failure to exhaust administrative remedies, and then — without explaining why — dismissed the remaining claims too.

Martínez appeals. Unfortunately, her briefs are, like her complaint, disorganized and opaque — they float legal theories

---

[1] Martínez's son, mother, and sister joined as parties plaintiffs. The district judge found — and Martínez does not argue otherwise — that their claims are derivative of hers. So we treat the case as if Martínez were the only plaintiff and appellant.

but do not always ground them in the case, for example.[2]  Yet she still ends up with a partial victory, as we affirm in part and reverse in part.  We explain our thinking below.  First, a little background.

## How the Case Got Here

A lawyer by training, Martínez worked for years as a Puerto Rico government employee.  In the late 2000s, for example, she held key posts — director of the office of legal affairs and auxiliary administrator of the office of administration — within the VRA.  A member of the Popular Democratic Party — one of Puerto Rico's two main political parties, the other being the New Progressive Party — Martínez has a visibly-apparent disability that affects her mobility.  And our defendants knew about her political affiliation and her disability.

Martínez's professional life was going along swimmingly — until the New Progressive Party's Luis Fortuño Burset became Puerto Rico's governor in January 2009.  Sadly for Martínez, over the next six months VRA personnel stripped her of meaningful

---

[2] Her opening brief's jurisdictional statement, for instance, makes passing reference to the possibility that defendants violated her Fifth- and Fourteenth-Amendment rights.  But she never explains how or why this is so.  Obviously then, any argument based on these theories is waived.  See, e.g., HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 577 (1st Cir. 2014) (explaining that arguments "not developed in a party's opening brief are waived").

duties, banished her to a subpar office, and made fun of her disability (to list just a few of the indignities inflicted on her).  As a coup de grâce, the VRA told her in a letter dated January 14, 2010 — which she acknowledged receiving the next day, January 15 — that she was "being terminated" effective February 19, 2010 as part of a government downsizing required by law.  That law (known as "Law 7") called for (among other things) the termination of certain commonwealth employees based on seniority, all in the hopes of putting Puerto Rico on a better financial footing.  See generally Álamo-Hornedo v. Puig, 745 F.3d 578, 580 (1st Cir. 2014) (discussing Law 7).  She could not work after January 20, 2010, the complaint says, because the stress caused by all the "political [and] disability discrimination" perpetrated by defendants "exacerbated her physical disability."

Not willing to go away without a fight, Martínez "attempted" (her word, not ours) to file an administrative appeal with the Public Service Labor Relations Commission on February 12, 2010.  Accusing the VRA of discriminating against her because of her political affiliation and disability, her "attempted" filing asked the commission to "declare void and null the layoff that was notified."  As best we can tell, Martínez never says what became of her "attempted" filing.  Anyway, the VRA let her go 7 days later, on February 19, 2010.

Still upset about the termination, Martínez filed a complaint with the EEOC on July 12, 2010 and an amended complaint on August 17, 2010, alleging political and disability discrimination.[3]  Her amended EEOC complaint specifically accused the VRA of replacing her with two nondisabled "female lawyers" who "are politically affiliated [with] the governing party."  She asked the EEOC for a right-to-sue letter on February 2, 2011.  But before getting one, she sued our defendants in federal court on February 17, 2011.  The EEOC gave her a right-to-sue letter about a month later, on March 18.

Martínez's 103-paragraph federal complaint is hardly a picture of clarity.  Giving that document a generous read, she seemingly alleges (as best we can discern) four categories of claims.  The first involves a political-discrimination claim tied to 42 U.S.C. § 1983 (dealing with deprivations of federally-protected rights at the hands of state actors), 42 U.S.C. § 1981 (declaring all persons "have the same right" to be free from discrimination in specific activities, like making and enforcing contracts and bringing suits), and 42 U.S.C. § 2000d (forbidding racial discrimination by federal-grant recipients).  The second involves a disability-discrimination claim under Title I of the

_____

[3] EEOC stands for Equal Employment Opportunity Commission.

- 5 -

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The third involves an age-discrimination claim under the Age Discrimination in Employment Act ("AEDA"), 29 U.S.C. § 621 et seq. And the fourth involves a grab-bag of claims under Puerto Rico law.

To Martínez's complaint, defendants responded with a motion to dismiss for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Basically they argued that the statute of limitation had run out on any section 1983 claim: the applicable one-year limitations period, they wrote, started running no later than January 20, 2010 (the date when she could no longer work because of all the alleged discrimination she had experienced) — but she filed her complaint on February 19, 2011, they added, nearly one month after the limitations period had expired. Oddly, defendants cited no authority (as far as we can see) for the idea that a late-filed section-1983 claim is jurisdictionally barred from federal court. See generally Williams v. Henderson, No. 14-5150, 2015 WL 5638015, at *1 n.3 (10th Cir. Sept. 25, 2015) (unpublished) (agreeing with cases from the Seventh and Ninth circuits holding that section 1983's limitation period is not jurisdictional). Odder still, they argued — without supporting reasoning — that because she filed her section-1983 claim out of time, the judge had to dismiss all

federal claims (not just the section-1983 claim).  And then they suggested that the judge should decline jurisdiction over the local-law claims.

Focusing with laser-like intensity on the section-1983 claim, Martínez fired back that the one-year limitations clock did not start ticking until <u>after</u> February 19, 2010, when she learned that the VRA had replaced her with persons who — unlike her — were politically affiliated with the new administration (she does not specify the precise date, regrettably).  Alternatively, she argued that her August 2010 EEOC filing tolled section 1983's limitations period (tolling typically operates to interrupt and so postpone the limitation period's running), making her section-1983 claim (filed less than a year later) timely.

Taking up defendants' Rule 12(b)(1) motion, the district judge (like the parties) zeroed in on section 1983.  And he ruled, first, that the limitations period began running on January 15, 2010 when Martínez got the termination letter, not when the VRA hired her replacement — though he then concluded that the limitations clock reset when she filed her EEOC complaint on July 12, 2010.  So far, so good, for Martínez.  But noting that she had sued defendants before getting an EEOC right-to-sue letter, the judge ruled that she had not exhausted her section-1983 claim administratively (remember, the judge keyed his analysis to

section 1983).  And — here's the kicker — he then dismissed all claims (not just the section-1983 claim) with prejudice:  as best we can discern, he jettisoned all federal claims on exhaustion grounds and relinquished jurisdiction over the supplemental local-law claims.

Which brings us to today, with the parties fighting over the judge's section-1983-driven decision.  Essentially, Martínez argues that she did not have to exhaust her section-1983 claim for political discrimination with the EEOC.[4]  She also insists that she timely filed her federal complaint, either because she brought it within a year after learning that the VRA had replaced her with persons politically simpatico with the party in power (she did not know about the VRA's politically-discriminatory motives until the replacements appeared, the theory goes) or because her EEOC filings reset the limitations clock.  And, wrapping up, she contends that

---

[4] Reader alert:  Recall how Martínez's complaint seemingly suggests that three statutes drive her political-discrimination claim — section 1983, section 1981, and section 2000d.  Well, her brief does not seriously discuss whether or how sections 1981 and 2000d apply in the context of this case, meaning she has waived any possible arguments tied to those provisions.  See, e.g., Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 351 n.2 (1st Cir. 1992) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), for the canonical rule that arguments not developed in any meaningful way are waived); see also Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (adding that "claims not made" and claims "'confusingly constructed and lacking in coherence'" are considered waived too (quoting United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008))).

her receipt of the EEOC's right-to-sue letter before the judge dismissed the case cured her failure to exhaust her disability- and age-discrimination claims. Defendants' brief disagrees with just about everything Martínez says — though they changed their tune a bit on the disability-discrimination issue at oral argument, as we'll soon see.

Time to roll up our sleeves and sort this all out.

## Standard of Review

Relying on Rule 12(b)(1), the judge (to repeat ourselves) decided the statute-of-limitations and exhaustion issues as if they implicated the court's subject-matter jurisdiction. On both scores, we have our doubts. As a general matter, statutes of limitations are affirmative defenses rather than jurisdictional bars. See, e.g., Bowles v. Russell, 551 U.S. 205, 218-19 (2007). And, for reasons that we get to shortly, the exhaustion requirements involved here — though compulsory — are not jurisdictional either. Perhaps then the judge should have analyzed the case under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) rather than under Rule 12(b)(1) (lack of subject-matter jurisdiction). See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 n.6 (1st Cir. 2005).

No matter, because under either rule we review the judge's order de novo, accepting Martínez's well-pleaded facts as

- 9 -

true and drawing all reasonable inferences in her favor. See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006); see also Román-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 45 (1st Cir. 2011). And we can affirm a dismissal under either rule on any ground supported by the record. See, e.g., McCloskey, 446 F.3d at 266. The parties (and we) rely on facts outside the pleadings. But that is okay given the particular circumstances here. See, e.g., Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (explaining that a court can "consider whatever evidence has been submitted" in deciding a Rule 12(b)(1) motion); Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005) (noting, among other things, that a court faced with a Rule 12(b)(6) motion can consider "facts" susceptible to "judicial notice" and "concessions" in plaintiff's "response" to the dismissal motion); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (adding also that a court confronted with a Rule 12(b)(6) motion can consider "documents the authenticity of which are not disputed by the parties").

## Political Discrimination (Section-1983 Claim)

### Administrative Exhaustion

Whether Martínez had to administratively exhaust her section-1983 claim for political discrimination is easy. Controlling caselaw holds that for a person in her shoes,

- 10 -

exhaustion is not a precondition to bringing a section-1983 claim in federal court. See, e.g., Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 501-02, 516 (1982); Álamo-Hornedo, 745 F.3d at 581.[5] So we have no trouble concluding that the judge erred in holding otherwise.

Now on to the more difficult issue: whether the statute of limitations ran out on Martínez's section-1983 claim.

## Statute of Limitations

For anyone not up-to-speed on how a statute-of-limitations analysis works for a section-1983 claim, here's a quick primer.

Because section 1983 does not have its own statute of limitations (i.e., a provision intended to protect defendants from having to defend against stale claims), courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred — in Puerto Rico, one year.[6] See, e.g., Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)

---

[5] Fyi: A federal statute — providing that "'[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted'" — requires prisoners (and only prisoners) to exhaust administrative remedies before bringing a section-1983 suit. See Woodford v. Ngo, 548 U.S. 81, 87-88 (2006) (quoting 42 U.S.C. § 1997e(a)).

[6] Our cases treat Puerto Rico as a state for section-1983 purposes. See, e.g., Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012).

- 11 -

(citing, among other things, P.R. Laws Ann. tit. 31, § 5298(2)). Courts use federal law, though, to figure out when the limitation clock starts ticking. So for, say, an ousted public employee pushing a political-discrimination claim, our rule is that the ticking starts when she knew or had reason to know of the injury on which her claim rests. And this is true even if she did not know that political animus had caused her injury. See id. at 749-50 (explaining that a plaintiff "need not know all the facts that support [her] claim in order for [the limitations] countdown to commence"); see also Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (citing Marrero-Gutiérrez v. Molina, 491 F.3d 1, 5-6 (1st Cir. 2007)). But just as we borrow the state's limitations period in section-1983 cases, so too we borrow the state's tolling rulings — unless of course they are hostile to federal interests. See, e.g., Rodríguez, 659 F.3d at 173; López-González v. Mun. of Comerío, 404 F.3d 548, 552 (1st Cir. 2005). One tolling rule — a rule courts construe narrowly against the person seeking its protection — provides that an "extrajudicial claim" can "interrupt[]" the statute of limitations, causing the limitations period to restart. See P.R. Laws Ann. tit. 31, § 5303; Rodríguez Narváez v. Nazario, 895 F.2d 38, 43-44 (1st Cir. 1990) (discussing Puerto Rico law).

Back to our case.  Like the district judge, we believe the limitations countdown began on January 15, 2010 — the day Martínez learned authoritatively of her termination, plus the reason for it (the legitimacy of which she could then assess), even though, as she points out, the missive made the ouster effective February 19, 2010.  And we reach this conclusion because "in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee."  Morris, 27 F.3d at 750 (collecting caselaw); see also Rivera-Muriente, 959 F.2d 349, 353 (emphasizing that "[i]n employment discrimination cases involving wrongful discharges, the statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal)").

"Normally" implies that exceptions exist, Martínez protests.  And she thinks that the circumstances of her case are among them because (her argument continues) she did not know that political animus lay behind her firing until the VRA replaced her with persons affiliated with a party different from hers sometime after February 19, 2010 — meaning (by her lights) that she timely filed her section-1983 claim on February 17, 2011 (i.e., before the one-year limitation period had expired).

- 13 -

We are unmoved. Put to one side that Martínez's complaint suggests she knew (or at least had chargeable knowledge) of the political animus well before her replacements came on board — don't forget, the complaint alleged that the stress caused by the "political . . . discrimination" heaped on her affected her ability to work in and around the time of January 2010. What dooms her effort here is that our cases (as we noted a few paragraphs back) flatly reject the idea that a claim only accrues — and the limitations countdown only starts — when "the plaintiff knows of both the injury and the discriminatory animus." See Marrero-Gutiérrez, 491 F.3d at 6. Stated differently (and more colorfully), a plaintiff's "cause of action" does not "exist[] in what amounts to a state of suspended animation until" she is "aware of the . . . political motives behind the adverse employment decision." See Morris, 27 F.3d at 749-50.

So again, the limitations period expired one year after January 15, 2010 — i.e., about a month before Martínez filed suit. Her only hope then is to convince us that some tolling act occurred. And she tries to do just that. Citing section 5303, Martínez argues that her August 2010 EEOC filing is an "extrajudicial claim" that caused the limitations term to start anew — meaning (at least in her mind) that she did file her February 2011 federal complaint within the one-year period.

- 14 -

Call us unconvinced. The parties cite no translated case from the Puerto Rico Supreme Court (and no case from us or the United States Supreme Court interpreting Puerto Rico law) holding that an EEOC complaint can toll the limitations period for a section-1983 claim based on the same core of facts. But, thankfully, the caselaw out there does provide enough light to illuminate the path to decision.

For instance, cases say that to have any tolling effect, an extrajudicial claim must be identical to the later suit in several respects: the two "must be asserted against the same defendants in the same capacities" — "new defendants should not be added"; they "must be based on the same substantive claims"; and they "must seek the same form of relief." Rodríguez-García v. Mun. of Caguas, 354 F.3d 91, 98 (1st Cir. 2004) (discussing tolling under section 5303). The purpose behind the identicality requirement is to stop plaintiffs from sidestepping "the notice function of the statute[] of limitations" when they file their "belated federal court complaints." Id. at 97.

The first problem for Martínez all but leaps off the pages of the record: her EEOC charge named only the VRA and its administrator, Nydia Colón Zayas — conspicuously absent are the other defendants named in this suit. And so we easily conclude that the limitations period cannot be tolled as to the parties

unnamed in the EEOC charge, even without getting into thicket of whether an EEOC complaint can toll a political-discrimination-based section-1983 claim.

But we cannot avoid this thicket in dealing with the VRA and its administrator. Taking it one step at a time, though, we see that the Puerto Rico Supreme Court says that the filing of an administrative complaint will not toll the statute of limitations if the agency lacks jurisdiction over the charge — the idea apparently being that in such a situation, the administrative complaint and the later-filed judicial claim cannot be identical for tolling purposes. See Cintrón v. E.L.A., 127 D.P.R. 582, 594 (1990) (English translation available at 1990 WL 658719); see also Secretario del Trabajo v. Finetex Hosiery Co., 16 P.R. Offic. Trans. 1014, 1019-20 (1986). The parties — who agree on little else — agree that the EEOC does not have jurisdiction over section-1983 claims for political discrimination.[7] Having uncovered no authority to the contrary, and given Puerto Rico's tolling caselaw, we conclude that Martínez's EEOC filing did not reset the

---

[7] After stressing that the EEOC is responsible for enforcing laws prohibiting employers from discriminating against job applicants or employees on the basis of race, color, religion, sex (including pregnancy), national original, disability, age (40 or over), or genetic information, Martínez, for example, writes that notably missing from this list is anything granting the EEOC "jurisdiction" over "political discrimination claims."

limitations clock for her section-1983 political-discrimination claim.

As for whether this result jibes with federal interests, we think that it does.  Here is why.  Our judicial superiors have said that Reconstruction-Era civil-rights acts like sections 1981 and 1983 "exist independent of any other legal or administrative relief that may be available as a matter of federal or state law." Burnett v. Grattan, 468 U.S. 42, 50 (1984) (emphasis added).  They have also said that a discrimination charge filed with the EEOC does not toll the limitations period for a section-1981 action based on the same facts (section 1981, remember, protects certain rights against racial discrimination).  See Johnson v. Ry. Express Agency, 421 U.S. 454, 466 (1975).  For our part, we have indicated — without holding — that the logic of Johnson suggests "no" is the right answer to the question of whether filing an EEOC charge affects the limitations period for a section-1983 claim.  See Cintrón-Lorenzo v. Fondo del Seguro del Estado, 634 F.3d 1, 2 (1st Cir. 2011).  And ultimately, Martínez offers no compelling argument as to why today's decision — which makes explicit what Cintrón-Lorenzo implies — contravenes federal interests.

The net result of all this is that Martínez's section-1983 claim is time-barred.  So we affirm the dismissal of this claim (albeit on different grounds) and push ahead.

- 17 -

## Disability Discrimination (ADA Claim)

As we said many pages ago, the judge did not explain why he kicked out Martínez's ADA claim of disability discrimination. But based on our reading of his order, we believe that he intended to dismiss that claim on the same grounds as the section-1983 claim: i.e., failure to exhaust administrative remedies, because she sued about a month before getting the right-to-sue letter. The parties are of the same view, apparently, because their briefs spill much ink over whether the ADA claim fails on failure-to-exhaust grounds.

Let's step back to gain some perspective. The ADA, broadly speaking, prohibits "covered entit[ies]" from "discriminat[ing] against" qualified persons because of their disabilities. See 42 U.S.C. § 12112(a), (b)(1). Modeled on Title VII of the Civil Rights Act of 1964, the ADA incorporates that statute's enforcement provisions, including (as relevant to the type of ADA claim in play here) the requirement that a plaintiff exhaust her administrative remedies before seeking judicial redress. See, e.g., Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277-78 (1st Cir. 1999). More specifically (and simplifying slightly, without affecting the analysis), one part of the statutory schematic creates federal jurisdiction over all "actions brought under" the statute, see 42 U.S.C. § 2000e-5(f)(3);

- 18 -

and another sets out conditions precedent to bringing suit, among which are filing a timely charge with the EEOC, see id. § 2000e-5(e)(1), and receiving an EEOC right-to-sue letter before suing in federal court, see id. § 2000e-5(f)(1).

As far as precedents go, the Supreme Court holds that the timely-charge requirement is mandatory but not jurisdictional — the rationale being that the timeliness provision is entirely separate from the statute's jurisdictional provision and "does not speak in jurisdictional terms." See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 394 (1982). All of this means that the timeliness requirement is subject to waiver, estoppel, and tolling when equity requires. See id. at 393; see also generally Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) (stressing that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character"). The provision requiring notice of a right to sue is also separate from the jurisdictional provision. And in a case touching on that requirement, we said that "[a]lthough [plaintiff] filed her original court complaint before she filed her EEOC complaint, [she] did receive a right to sue letter" eventually and defendants have not argued the point; so — consistent with Zipes's holding about delay in filing charges not affecting jurisdiction and the applicability of equitable

- 19 -

exceptions like waiver — we found "the point . . . waived." O'Rourke v. City of Providence, 235 F.3d 713, 725 n.3 (1st Cir. 2001) (quoting Zipes); see also Frederique-Alexandre v. Dep't of Nat. & Envtl. Res. of P.R., 478 F.3d 433, 440 (1st Cir. 2007) (holding "that the exhaustion requirement is not a jurisdictional prerequisite, but rather is subject to" equitable exceptions, but noting that "futility" does not fall within the small field of exceptions). O'Rourke echoes the prevailing view elsewhere, which we now expressly adopt as our own: i.e., that while the right-to-sue-letter requirement remains, it is simply "a precondition to bringing" suit, not a jurisdictional bar, and thus "can be waived by the parties or the court." Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999) (collecting caselaw); see also Surrell v. Ca. Water Serv. Co., 518 F.3d 1097, 1104-05 (9th Cir. 2008); Worth v. Tyer, 276 F.3d 249, 259 (7th Cir. 2001); Jones v. Am. State Bank, 857 F.2d 494, 499, 500 (8th Cir. 1988).

At oral argument, defendants' lawyer changed his position, waiving any argument about the right-to-sue letter by essentially agreeing with Martínez that the judge should not have dismissed the ADA claim on that ground. Consistent with O'Rourke, we accept defendants' waiver and reverse the dismissal of that

- 20 -

claim.[8]   And given our conclusion, we need not ponder Martínez's theory that the EEOC's eventually giving her a right-to-sue letter cured any issues with her prematurely filing suit.

### Age Discrimination (ADEA Claim)

As for Martínez's supposed ADEA claim — the ADEA, roughly speaking, protects persons 40 years old or older from age-based employment discrimination, see Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014) — we need only say this.  Martínez's had to exhaust her administrative remedies before bringing an age-discrimination claim under the ADEA to court.  See Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005) (citing 29 U.S.C. § 626(d)); see also generally Kale v. Combined Ins. Co., 861 F.2d 746, 751-52 (1st Cir. 1988) (noting that the charge-filing requirement is mandatory, though not jurisdictional).  And she rightly concedes as much.  But she did not mention age discrimination in her EEOC charge; she alleged only political and

---

[8] Defendants' counsel did note before us that he thought Martínez's ADA claim should not get to a jury.  And his clients' brief does argue that Martínez has not shown that her disability "substantially limits" a major life activity.  But courts must construe the "substantially limited" standard "broadly in favor of expansive coverage," without "demand[ing] extensive analysis." 29 C.F.R. § 1630.2(j)(i), (iii).  Martínez does allege that her disability "impairs her mobility at a regular rate than other nondisabled individuals."  And we must accept this allegation as true at this stage of the litigation.  Defendants' argument is at best fodder for a summary-judgment motion, not a motion to dismiss.

disability discrimination.  And given her fatal failure to exhaust,

her supposed ADEA claim does not belong in federal court — which

compels us to affirm the dismissal of this claim.

### Local-Law Claims

That leaves one loose end.  The judge (we remind the

reader) did not explain why Martínez's local-law claims had to go

(he spent no time on whether any of these claims has legs, for

example) — though we assume that having dismissed the federal

claims, he declined to exercise supplemental jurisdiction over the

local-law claims.  The parties give us no reason to assume

otherwise.  Given that assumption, and because we are reversing

the dismissal of the ADA claim, the judge on remand must reinstate

the local-law claims too.  Of course if the judge again gets rid

of the ADA claim before trial, he "can reassess whether to keep

jurisdiction over the local-law claims."  Rivera-Corraliza v.

Puig-Morales, 794 F.3d 208, 227 (1st Cir. 2015).

### Final Words

To the extent that Martínez's briefs hint at other

arguments, they lack coherence, development, or both.[9]  And instead

---

[9] One example is her mentioning the continuing-violation exception
to the section-1983 limitations period.  Putting aside the fact
that she débuted this concept in her reply brief, see Eirby, 515
F.3d at 37 n.4 (holding that an argument omitted from an
appellant's opening brief is generally deemed waived), she makes
nothing more than a passing reference to it.  Thus any argument in
that direction is waived.  See Roland M. v. Concord Sch. Comm.,

- 22 -

of trying to hazard our own guess as to "what these arguments may or may not portend," we do what we have done before (including in this very opinion) — rely on the familiar rule that insufficiently-developed arguments are waived. See Marek v. Rhode Island, 702 F.3d 650, 655 (1st Cir. 2012) (quoting Zannino, 895 F.2d at 17).[10]

So our work is at an end, with the bottom line being that we affirm the judge in every respect, except that we reverse the dismissal of both Martínez's ADA claim and her local-law claims.

**Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No costs to either side.**

---

910 F.2d 983, 997 n.8 (1st Cir. 1990) (relying on Zannino for the point that "issues adverted to in passing, without any attempt at developed argumentation, are waived").

[10] See also generally United States v. Cunningham, 429 F.3d 673, 678 (7th Cir. 2005) (Posner, J.) (emphasizing that "appellate judges" are not required "to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence"); United States v. Mena, 933 F.2d 19, 30 (1st Cir. 1991) (implicitly recognizing that very point).